THE SECOND NATIONAL BANK OF CIRCLEVILLE *v.* HYDE ET AL.

**358**

(Decided June 12, 1928.)

*Messrs. Adkins & Adkins,* for plaintiff in error.
*Mr. Wilby G. Hyde,* for defendants in error.

MAUCK, J. On June 23, 1927, Robert L. Hyde filed a petition in the court of common pleas against Jacob Minshall, alleging that in July, 1926, the plaintiff and defendant entered into a partnership for the purpose of carrying on a farming operation, and that the defendant had become insolvent and was unable to carry out his contract, and praying for a dissolution of the partnership. As a second cause of action it was pleaded that the plaintiff, Hyde, agreed to and did loan to the defendant Minshall money for the carrying on of the farming operations and took a chattel mortgage upon certain of the defendant's property. A receiver was asked for to take possession of the partnership property, consisting of growing crops, and to take charge of the mortgaged personal property, and foreclosure of the chattel mortgage was sought. The defendant Minshall on the same day confessed the petition

to be true, and the court appointed a receiver for all the property referred to in that pleading. The property was appraised and sold by the receiver. On July 27, 1927, the Second National Bank of Circleville was made a party and filed an answer and cross-petition in the case. By way of answer it admitted that the plaintiff and the defendant Minshall were doing a general farming business and owned certain crops jointly, but averred that no partnership relationship existed between them, and that they were in fact landlord and tenant. By way of cross-petition it pleaded ownership of a promissory note signed by Minshall, and alleged that on June 6, 1927, it had obtained judgment upon that note in the court of common pleas of Ross county in the sum of $970.61; that thereafter on the same day an execution was levied to satisfy said judgment "upon all the interest of the said Jacob Minshall in and to the following personal property: About 200 acres of growing corn, 57 acres of growing wheat, and 55 acres of growing oats, all on the lands of Robert L. Hyde in Deerfield township, Ross county, Ohio." And it was further alleged that said levy was still in full force and effect. The cross-petitioner prayed that it might be decreed to have a first lien and be protected and paid out of the proceeds of the sale of the property mentioned. By way of answer to this cross-petition, Hyde pleaded that the levy referred to was abandoned by the bank, and that the sheriff returned said execution on June 7, 1927, by direction of its attorneys, that the interest of Minshall in the property referred to was only his equity therein, and that, if said levy had any vitality, it only covered

the personal interest of Minshall in the property after the partnership debts had been satisfied. The answer further pleaded that all of the interest of Minshall in the property levied upon had been pledged by Minshall to Hyde to pay the expenses of said partnership enterprise. Minshall filed a like answer. Upon a hearing in the common pleas, the court found the cross-petition of the bank to be not true and dismissed the same. To reverse that judgment of dismissal error is now prosecuted in this court.

The contract between Hyde and Minshall was verbal, and can only be appreciated by understanding the circumstances under which it was made. Minshall was an insolvent farmer. He owned nothing but chattel property, consisting of teams, implements, etc., all of which were incumbered by chattel mortgage to their full value. In addition he owed large unsecured sums, among which was the note on which the bank recovered its judgment. Hyde approached Minshall with the view of having Minshall join him in farming the land owned by Hyde. Minshall said that he could not do so on account of his debts; that his chattel mortgagees were pushing him. Thereupon Hyde purchased the chattel mortgages, paying out over $4,000 therefor. This saved Minshall from immediate foreclosure and gave him an opportunity to use his chattels. The parties agreed that Minshall was to furnish all the labor, bear half of certain expenses and all of certain other operating expenses, and that the proceeds of the crops were to be divided equally. Stock was to be furnished by Hyde, and the proceeds of the sale of the increase thereof was to be

equally divided. A considerable cash outlay was required to keep the operation going. The labor expense alone was $50 or more per week, and there was feed to buy, etc., entailing a large and continuous cash expenditure on Minshall's part. And Minshall had no cash. It was accordingly agreed that Hyde should advance cash sufficient to enable Minshall to go forward with the arrangement. Minshall had no other resources, so it was agreed that Hyde should be repaid "out of the crop," "from the crops," "out of the live stock," "out of his one-half," "out of the partnership crops," "from the proceeds of the enterprise." The parties called the arrangement a partnership. Hyde was to sell all the live stock after consulting Minshall. Minshall was not required to but did consult Hyde about the employment of labor. Hyde was to be on the farm and help with the work, but the extent of the requirement in this respect was so vague that it can hardly be said to have been a requirement. Hyde furnished the money required to carry on Minshall's share in the enterprise, and the immediate question is whether for the money so advanced he should be first paid out of the proceeds of the sale of the growing crops.

Certainly equity favors the claim of Hyde that he be so reimbursed. Minshall had nothing out of which the bank could realize a cent except the crops, and Minshall could have had no interest in the crops if Hyde had not advanced the money necessary for the crops' production. It is admitted that, if a partnership existed between the parties, Hyde is entitled to a reimbursement from the partnership assets, to wit, the growing crops, and it is clear that

the parties considered themselves partners and styled themselves as such. Giving Hyde the credit of being an ordinarily prudent man, we would be slow to determine that he would enter into an arrangement with Minshall that would enable the unsecured creditors of the latter to recoup their losses at Hyde's expense. It is a fair conclusion that the parties meant that their relations should be such as to afford Hyde protection in this respect. Bearing in mind the equities of Hyde, and the complete lack of equity on the part of the bank, we conclude that the parties had a right to and did create a partnership, although they may not have known that that relationship established that mutual agency of partners that distinguishes the partnership relation. This is not a case where a partnership is sought to be implied and the party asserting it has failed to show that mutual agency from which a partnership is inferred. It is instead a case where a partnership relation is directly established by those making the arrangement, and the mutual agency follows as a matter of law. It was not necessary, however, for the parties to create a partnership to give to Hyde the protection to which he was equitably entitled, and it is not necessary to affirm this judgment that we find that relation to have existed in the instant case.

Relations between the owner of the land and one contracting to grow a crop thereon were generally classified at common law either by the terms "owner and cropper" or "landlord and tenant." Where the relation was that of owner and cropper, the title to the whole of the growing crop was in the owner and subject to sale by him or to be levied on

as his property. Where the relation was that of landlord and tenant, the title to the whole crop was in the tenant, with the full power of disposal, voluntary or involuntary. The manifest injustices that ensued led to legislation in some states, and in others to adjudications of the courts that tended to avoid the mischief that resulted from converting the farmer in the one case, and the owner in the other, to mere creditor of his associate in the joint enterprise. Tiffany on Landlord and Tenant, Sections 10, 20, 253. As a result of these departures from the common law, it is the well-nigh universal rule that the tenant no longer owns the crop and personally owes the landlord a rental, and that the owner possesses the crop and owes the cropper for services, but that the parties are tenants in common in the crops produced or being produced by their joint contributions. 8 Ruling Case Law, 374; Freeman on Cotenancy and Partition, Sections 100 and 101.

In this state there was enacted at an early day what is now Section 10433, General Code, and, while that section is codified as a part of the Justices' Code, it is declaratory of the law generally in Ohio. By that section it is provided that however the relation between the parties may be classified, if a levy be made on the growing crop to satisfy the debt of one of those interested therein, the rights of the other party thereto shall not be prejudiced, and that a sale under such a levy must be made subject to the interest of the party against whom no levy has been made.

When the bank in the instant case made its levy on the crop in question, it acquired a lien on Minshall's interest in the crop, "subject to the claim

or interest of the landlord,'' and this lien created in the bank no better or greater interest in the crop, as against Hyde, than Minshall had; that is, Hyde and Minshall were tenants in common in the crop, their respective shares determinable by the contract under which they were operating. By that contract, whether it was a partnership as the parties supposed or not, Minshall was not entitled to one-half the crop, but such an amount less than one-half as would remain after Hyde's advancements to the joint enterprise had been satisfied out of Minshall's share. This is not because Minshall owned one-half and attempted to fix a lien thereon in Hyde's favor, but because under the contract Minshall never became the owner of that part of the one-half necessary to compensate his co-tenant for contributions agreed to be made by Minshall, but really made by Hyde.

In ordering Hyde paid out of the proceeds of the sale in preference to the claim of the bank, the trial court was right.

*Judgment affirmed.*

MIDDLETON, P. J., and THOMAS, J., concur.