[No. 21343. *En Banc.* October 8, 1929.]

JOHN A. McNULTY *et al., Respondents,* v. JOHN DEAN *et al., Appellants.*[1]

*Edward C. Butler* and *E. J. Doyle* (*R. J. Venables* and *Henry R. Newton,* of counsel), for appellants.

*Tannahill & Leeper, R. E. Durham,* and *Homer L. Post,* for respondents.

FULLERTON, J.—In this controversy, the facts are stipulated. On April 16, 1923, the respondents Mc-Nulty and Kenney were the owners of certain farm lands situated in Asotin county, in this state. On the day named, they entered into a written lease with one

[1]Reported in 281 Pac. 9.

G. E. Howe, whereby they leased the property to Howe for a term of three years, Howe agreeing to return to them, yearly, as rental for the land, one-third of the crop grown thereon. Howe entered into the possession of the land following the execution of the lease, and farmed the land thereunder until the fall of the year in 1927. The landlords' share of the crop for the year 1926 amounted to 163 sacks of wheat. Howe, pursuant to his contract of lease, stored the grain in a public warehouse, taking negotiable warehouse receipts therefor, but, for reasons that will presently appear, did not turn the receipts over to his landlords. For the year 1927, the landlords' share of the crops amounted to 416 sacks of wheat. This wheat also Howe stored in a public warehouse, taking the storage receipts in his own name.

On April 20, 1923, four days after the lease was entered into, the respondents mortgaged the real property to one Walter B. Brooks to secure a loan made to them in the sum of $3,000. Brooks later assigned the mortgage to John Dean, who foreclosed it, and on July 17, 1926, caused the property to be sold under the decree. Dean became the purchaser of the property at the foreclosure sale, bidding in the property for the amount of the foreclosure decree in full. The crop grown on the land in 1926 matured about July 10 of that year, and at the date of the sale, the tenant had severed about one-fourth of it from the land. The judgment debtors did not redeem the land from the sale, and the sheriff executed a deed to purchaser on July 27, 1927. The crop for the year 1927 matured about July 15 of that year, and at the time of the sheriff's deed, the tenant had severed approximately five per cent of it from the land.

After the institution of the present action, the wheat was sold under the order of the court and the money

received therefor—$1,384.46—deposited in the registry of the court. The controversy is between the purchaser of the property and the landlords as to which of them is entitled to the money so deposited. The trial court decided that the rentals belonged to the landlords, less interest on the purchase during the period of redemption, and less the taxes the purchaser had paid with interest, and it divided the money on deposit between them in these proportions. The judgment creditor appeals from this judgment.

The statute applicable to the situation is found at § 602 of Remington's Compiled Statutes, and reads as follows:

"The purchaser from the day of sale until a resale or redemption, and the redemptioner from the day of his redemption until another redemption, shall be entitled to the possession of the property purchased or redeemed, unless the same be in the possession of a tenant holding under an unexpired lease, and in such case shall be entitled to receive from such tenant the rents or the value of the use and occupation thereof during the period of redemption: Provided, that when a mortgage contains a stipulation that in case of foreclosure the mortgagor may remain in possession of the mortgaged premises after sale and until the period of redemption has expired the court shall make its decree to that effect and the mortgagor have such right: Provided further, that as to any land so sold which is at the time of the sale used for farming purposes, or which is a part of a farm used at the time of sale for farming purposes the judgment debtor shall be entitled to retain possession thereof during the period of redemption and the purchaser or his successor in interest shall if the judgment debtor do not redeem have a lien upon the crops raised or harvested thereon during the period of such possession for interest on the purchase price at the rate of six per cent per annum during the period of possession and for any taxes with interest: . . ."

As the lands here in question are farm lands, and were used at the time of the foreclosure sale for farming purposes, there would seem to be but little doubt that the judgment debtors, if they were in a situation to claim the benefit of the statute, were entitled to the crop grown in 1926, and to all that part of the crop grown in 1927, which was severed from the land prior to the execution of the sheriff's deed, subject, of course, to a lien for interest on the purchase price, and a lien for the taxes paid with interest. On this branch of the case, however, the appellants contend that the judgment debtors are not in a situation which will enable them to claim the benefit of the statute. The statute, it will be observed, provides that the judgment debtor shall be entitled to retain possession of the property during the period of redemption, making no reference to possession through an agent or other representative. The argument is that the right granted is one that must be exercised in person, and cannot be exercised through an agent or representative, such as a tenant. But we think this a too narrow view to take of the statute. It is the right to possession which the statute grants, and it places no restriction on the manner in which the right may be exercised. In the absence of special restrictions, the general rule is that a person may do through the agency of another whatever he is empowered to do in his own proper person, and we find nothing in the statute, or in the situation presented, which prevents the operation of the rule in this instance.

The question whether the judgment debtors are entitled to the proceeds of the unsevered part of the crop, is one of more difficulty, yet we think the trial court correctly determined it. It is the rule, in the absence of contract or in the absence of statutory restrictions, that crops, whether mature or immature, where

there has been no severance, either actual or constructive, so far partake of the nature of the realty as to pass by a sale of the realty, and this whether the sale is voluntary, as by deed from the owners, or involuntary, as by a judicial sale (*Woody v. Wagner*, 89 Wash. 429, 154 Pac. 819). But the rule, in judicial sales at least, is subject to legislative regulation. The legislature may prescribe the terms and conditions under which a crop will or will not pass by a judicial sale of the realty. The statute in question is such a regulation, and while it is not as definite in its language, or happy in its choice of words, as could be desired, it is not, to our minds, doubtful in meaning. It does not, in terms, it will be noted, vest in the judgment debtor the title to crops grown on or severed from lands sold at judicial sale during the period of redemption, but since it vests in the judgment debtor the right of possession to such lands during that period, and grants to the judgment creditor a lien on such crops "raised or harvested" during the period of such possession, it can have no other meaning. The words quoted, it will be observed, are in the disjunctive. The right is granted as to crops "raised" as well as to those "harvested." Raised is here used in the sense of matured, and harvested in the sense of severed, and the judgment debtor's right attaches to crops that mature during the period of redemption as well as to those that are severed during that period.

But it is said that the quoted words must be construed conjunctively, or as having a synonymous meaning, else the word harvested is redundant, and without application to the situation. This reasoning, however, assumes that there are no farm crops that can be harvested prior to their maturity, but this is a mistaken assumption. It is well known to every one familiar with farming operations that there are a

variety of crops that can be and are profitably harvested prior to maturity. Grain crops especially belong to this class.

Our conclusions require an affirmance of the decree, and an affirmance is ordered.

PARKER, FRENCH, MILLARD, MAIN, BEALS, TOLMAN, and HOLCOMB, JJ., concur.