60 Wn.2d 354 (1962)
374 P.2d 164
In the Matter of the Estate of HARRY MACHLIED, Deceased.
THELMA R. HOEFFER, Appellant,
v.
LAWRENCE MACHLIED, Respondent and Cross-appellant.[*]
No. 35980.
The Supreme Court of Washington, Department Two.
August 13, 1962.
DONWORTH, J.
This appeal and respondent's cross-appeal were taken from the trial court's order approving the executor's final report and distributing the assets of the estate of Harry Machlied (herein called the decedent).
The decedent, who was a bachelor, executed his will on September 15, 1959. On the same day, he executed a codicil "solely for the purpose of correcting an error in paragraph 1" of his will.
The parties involved in this litigation are Thelma R. Hoeffer, the decedent's half sister (appellant), and his cousin, Lawrence Machlied, who is also the executor of the estate (respondent and cross-appellant). Both of them survived the decedent.
The two paragraphs of the will, whose interpretation is necessary to a solution of the present controversy, read as follows:
"I. I give, devise and bequeath to my half sister, Thelma R. Hoeffer, if she does not predecease me, my undivided five sixths right, title and interest in and to a farm about six miles east of Colfax, Washington; and my five sixths right, title and interest in and to the real property which I now occupy as my home situated on the Pullman Highway in the south east part of Colfax, Washington; and all moneys and personal property of which I die possessed and to which I have ownership.
"As the date hereof Thelma R. Hoeffer and myself are tenants in common of said farm and said real property in Colfax, Washington, which I now occupy as my home, in each of which I own an undivided five sixths and Thelma R. Hoeffer owns an undivided one sixth." (Codicil)
"II. I give, devise and bequeath to to my cousin, Lawrence Machlied, my farm consisting of about 325 acres approximately twenty one miles west of Colfax, Washington, if both he and my half sister, Thelma R. Hoeffer, are alive at the time of my death. In the event said Thelma R. Hoeffer has predeceased me, I give, devise and bequeath to said Lawrence Machlied all of my property, both real and personal." (Will)
The total appraised value of all the real estate (including the landlord's share of growing crops) was $101,886.34. The *356 total appraised value of the personal property was $18,164.49.
The trial court's order distributed to each of the parties the respective parcels of real estate devised to them by the will and declared that the landlord's share of the growing crops on two parcels (appraised at $1,122.06) was personal property at the time of decedent's death.
The court order then decreed:
"That the debts of the deceased, expenses of administration, and any Federal Estate tax must be paid by application of the personal assets first, and then the realty to the payment thereof; that any Washington Inheritance tax must be paid by the heirs and distributees."
In appellant's brief, the questions to be decided by this court are stated to be:
"(1) Are the debts of the decedent, expenses of administration and federal estate tax to be paid by application of the personal assets of the estate, or are those debts, expenses and taxes to be paid by the respondent in his capacity as residuary devisee and legatee under the will; or (2) Are the debts, expenses and taxes to be paid by the devisees and legatees, ratably according to their interests."
We must construe the language of the will as it is written. The decedent did not direct from what source he intended the executor to pay the debts of the decedent, the expenses of administration, or the federal estate tax. In the first paragraph of his will, he disposed of his entire estate (except the 325-acre farm) by devising to appellant his five-sixths interest in the 173-acre farm and his home in Colfax, and bequeathed to her "all moneys and personal property of which I die possessed and to which I have ownership." In the second paragraph, he devised to respondent his 325-acre farm.
[1] Thus the decedent disposed of all assets which he owned at the time of his death. In the absence of a provision in the will as to the source of payment of the three items above mentioned, we must apply the general rule that the personal property is primarily liable for the payment of decedent's debts. In re Hickman's Estate, 41 Wn. (2d) *357 519, 250 P. (2d) 524 (1952); In re Small's Estate, 27 Wn. (2d) 677, 179 P. (2d) 505 (1947).
In the Hickman case we said:
"The community assets consist entirely of personal property, while (except for jewelry appraised at $210) the only separate asset is the Clarkston residence. In the absence of evidence that the testatrix intended otherwise, the personal property must first be applied to the payment of debts and the expenses of administration. In re Binge's Estate, 5 Wn. (2d) 446, 105 P. (2d) 689; In re Small's Estate, 27 Wn. (2d) 677, 179 P. (2d) 505.
"The clause in the will whereby the testatrix bequeathed to appellant `all other personal property owned by me' was, in effect, a general or residuary bequest. We think the will evidences the intention of the testatrix that the community personal property should first be applied toward payment of the debts and expenses of administration, and that the property specifically bequeathed and devised should not be resorted to unless the proceeds from the sale of the community personal property be insufficient for that purpose. RCW 11.56.160.
"The trial court did not err in charging the debts and expenses of administration to the community estate."
[2] We think that the foregoing rule is applicable to this present case, although the Hickman case involved community property, while here only separate property is involved. The trial court properly directed that the personal property should first be applied to the payment of the decedent's debts and costs of administration.
Appellant's first contention, in seeking a reversal, is that respondent is residuary legatee, because, if appellant had predeceased the decedent, respondent would have received the entire estate and thus his devises and bequests would have then been subject to the payment of the debts of the decedent and costs of administration.
Since this contingency did not occur, we cannot consider respondent as a residuary legatee. Under the facts as presented by the record, appellant is the residuary legatee with respect to the personal property.
[3] Regarding the payment of the federal estate tax, this court held, in In re Williamson's Estate, 38 Wn. (2d) *358 259, 229 P. (2d) 312 (1951), that, in the absence of a statutory provision or a direction of the testator to the contrary, the burden of the tax is upon the corpus of the estate. In the situation presented in this case the tax is payable first from the residuary bequest of personal property and then from the specific devises. In re Hickman's Estate, supra, and cases cited therein; In re Cloninger's Estate, 8 Wn. (2d) 348, 112 P. (2d) 139 (1941); In re Haukeli's Estate, 25 Wn. (2d) 328, 171 P. (2d) 199 (1946).
Appellant's second contention (which is an alternative to her first) is that RCW 11.56.160 applies to this case. She argues that there is no property in the estate except that which is specifically bequeathed or devised to the respective parties. The statute referred to provides:
"The estate, real and personal, given by the will to any legatees or devisees, shall be held liable for the payment of the debts, the expenses of administration and allowances to the family, in proportion to the value or amount of the several devises or legacies, if there shall not be other sufficient estate, except that specific devises or legacies may be exempted, if it appear to the court necessary to carry into effect the intention of the testator."
The statute provides an express exception for specified devises and legacies, whenever it appears to the court that such an exception is "necessary to carry into effect the intention of the testator." In this case, the fact that appellant received the personal property under a general, residuary bequest is sufficient to support the trial court's conclusion that the debts, expenses of administration, and taxes were intended to be paid out of the personal property.
As to appellant, the order of the trial court is affirmed.
Respondent has cross-appealed, contending that the trial court erred in:
1. Finding that the decedent intended "that no fee be allowed to the executor [respondent] for his services rendered as such."
2. Failing to allow fees to the executor.
3. Finding that certain crops growing on the farm devised *359 to respondent were, at the time of death, personal property.
4. Distributing decedent's share of those crops to appellant.
[4] In regard to the first two alleged errors, respondent sets forth the following portion of RCW 11.48.210:
"Where no compensation shall have been provided by will, or the executor shall renounce his claim thereto, he shall be allowed such compensation as to the court shall seem just and reasonable, based on the services rendered; ...."
We find nothing in the language of the will to indicate an intention on the part of the testator that the executor should not receive a fee for his services as such. Therefore, the presumption that the executor is to be paid a fee must be given effect.
Respondent's final argument on his cross-appeal is in support of his third and fourth assignments of error. Several cases are cited in support of the proposition that growing crops are a part of the real estate "until grown and matured, or severed, either actually or constructively."
Respondent's contentions relate to items 7 and 8, under the heading "Real Estate," in the inventory of the estate which he, as executor, submitted to the trial court. Items 7 and 8 are:
"7. The landlords share of 74 acres of growing wheat on the farm land described in item 5 hereinabove: said land being farmed under oral lease by John Moore; said landlords share being one-third of the grain harvested. $986.66
"8. The landlords share of 39 acres of growing barley on the farm land described in item 5 hereinabove: said land being farmed under oral lease by John Moore; said landlords share being one-third of the grain harvested. $135.40"
The issue is, who is entitled to the proceeds of crops which were growing at the time of the testator's death  the legatee of personal property, or the devisee of the land upon which the crops were growing?
*360 RCW 11.04.250 provides that title to land, and the rights accompanying title, vest in the devisee as of the time of death of the testator.
The question, then, would seem to be whether the growing crops were the testator's real property or his personal property, at the time of his death.
Our examination of the relevant cases, however, indicates that the answer to the above question is "neither!"
[5] It must be noted that at the time of the testator's death in March, 1960, the land in question was occupied and cultivated by a lessee, who paid his rent in the form of a one-third share of his crops. Although we have been unable to discover any Washington cases directly in point, the general rule is that where land is so leased, the whole product of the land rented, although the rent is to be paid by a share of the crops, is solely in the tenant until the share of the lessor is separated and delivered. Farnum v. Hefner, 79 Cal. 575, 21 Pac. 955 (1889); Wyandt v. Merrill, 107 Kan. 661, 193 Pac. 366, 108 Kan. 204, 194 Pac. 634, 15 A.L.R. 654, 658 (1921); Second Nat. Bank v. Hyde, 29 Ohio App. 357, 163 N.E. 587 (1928).
The above rule, from which there is no reason to depart in this case, is consistent in principle with the Washington cases which hold that growing crops are a part of the realty until severed, because both rules indicate that the right to possession of land is accompanied by ownership of the unsevered crops growing thereon. See McNulty v. Dean, 154 Wash. 110, 281 Pac. 9, 66 A.L.R. 1417 (1929); Woody v. Wagner, 89 Wash. 429, 154 Pac. 819 (1916).
In applying the general rule, we find that the testator did not own the crops, or one third of them, either as real property or personal property, as of the date of his death. It was error, then, to award the proceeds of the crops to appellant as part of the testator's personal property.
When the crops were harvested, respondent, as the landlord at that time, became entitled to one third thereof. His claim is based on his ownership of the land at the time the right to the landlord's share of the crop accrued, which *361 was after the time when rights in probate are fixed. Respondent is entitled to the crop rental listed in items 7 and 8, supra.
The trial court's order in this case is affirmed on appellant's appeal and reversed and remanded on respondent's cross-appeal, with instructions to (1) fix, as the executor's fee, such sum (not exceeding the $500 requested by respondent) as the court deems reasonable, based on the value of the services rendered; and (2) to modify its Order Approving Final Report so that the landlord's share of the growing wheat and growing barley above referred to is distributed to respondent instead of appellant. Respondent shall recover his costs in this court.
It is so ordered.
FINLEY, C.J., OTT, HUNTER, and HAMILTON, JJ., concur.
November 26, 1962. Petition for rehearing denied.
NOTES
[*] Reported in 374 P. (2d) 164.