**Thomas Eugene WOMACH and Buttonwood Corporation, a Delaware corporation, Plaintiffs,**

v.

**Everett E. THOMAS and John Paul Thomas, Defendants.**

Court of Chancery of Delaware, Sussex County.

Submitted: Nov. 16, 1984.

Decided: Nov. 30, 1984.

Stephen P. Ellis, Tunnell & Raysor, Georgetown, for plaintiffs.

Patrick Scanlon and Robert J. Taylor, Barros, McNamara & Scanlon, Dover, for trustee in bankruptcy for defendants.

E. Stephen Callaway, Georgetown, for defendants.

HARTNETT, Vice Chancellor.

The issue presented is whether the title to growing crops passes with the title to the land upon a mortgage foreclosure sale. I hold that it does. The plaintiffs are the mortgagees in the mortgage and the purchasers of the real estate at the foreclosure sale. The plaintiffs claim that title to the unsevered crops passed to them as the purchasers of the land. The defendants—the mortgagors—claim that the crops were

mature and ready for harvesting at the time of the foreclosure sale and that title to the crops, therefore, did not pass upon sale of the land but remained in them. This issue is being litigated in this Court because it arose out of an application by plaintiffs for a preliminary injunction to stop defendants from harvesting the crops after plaintiffs had obtained legal title to the real estate in question. Plaintiffs have moved for summary judgment. The motion must be granted in part.

## I

The following facts were not disputed. In July of 1982, the plaintiffs filed a mortgage foreclosure action in the Sussex County Superior Court. Defendants, the mortgagors in the mortgage, filed a petition in bankruptcy approximately one week later. The resulting automatic stay of the foreclosure proceeding was lifted by the Bankruptcy Court in July of 1983. The plaintiffs' motion for summary judgment in the foreclosure proceeding was granted soon thereafter. The Sheriff's Sale took place on September 19, 1983, and was confirmed by the Superior Court on October 11, 1983. At the Sheriff's Sale, defendants' attorney stated that it was the opinion of his clients and of himself that the soybean crop, which had not yet been harvested, was not included in the sale as part of the land. Counsel for the plaintiffs disputed this position at that time. Neither the auctioneer nor the Sheriff indicated that the growing crops were to be excluded from the sale. The Sheriff's Deed does not contain any language reserving or excepting the soybean crop.

## II

■ On a motion for summary judgment the proponent must prove the absence of any genuine issue of material fact, and any doubts will be resolved in favor of the opponent. *Brown v. Ocean Drilling and Exploration Co.,* Del.Supr., 403 A.2d 1114 (1979). Any facts set forth under oath by the movant which remain uncontroverted by the opponent will be assumed to be true. *Tanzer v. International Gen. Indus., Inc.,* Del.Ch., 402 A.2d 382 (1979).

It is undisputed that the real property in question was properly foreclosed upon and properly sold at the Sheriff's Sale. It is also not in dispute that the soybean crop in question had not been harvested at the time the land was sold but was harvested pursuant to Order of this Court shortly after the Sheriff's Deed was recorded.

## III

■ It is generally held that growing crops are in such a relationship with the land that they pass with the title to the real property upon a conveyance unless specifically reserved by the seller. See *McNulty v. Dean,* Wash.Supr., 154 Wash. 110, 281 P. 9 (1929); *Langford v. Hudson,* Tenn.Supr., 146 Tenn. 309, 241 S.W. 393 (1922); 21A AM.JUR.2d, *Crops* § 11. The same general rule applies if the conveyance occurs involuntarily, such as by a foreclosure sale. *Chicago Joint Stock Land Bank v. McCambridge,* Ill.Supr., 343 Ill. 456, 175 N.E. 834 (1931); *Wootton v. White,* Md.Ct. App., 90 Md. 64, 44 A. 1026 (1899); 21A AM.JUR.2d, *Crops* § 18. This is so notwithstanding that crops are subject to execution process. *Cubbage v. Clements,* Del. Super., 14 A.2d 378 (1940). The plaintiffs, the purchasers at the Sheriff's Sale, therefore, would have received title to the soybeans and therefore had the right to enjoin the defendants from harvesting them unless there is an exception to the general rule.

## IV

Defendants, while acknowledging the general rule, assert that there exists an exception to it. This is so, defendants argue, where there are crops which are mature and are no longer drawing nutriment from the soil even though the crops have not yet actually been severed from the land by harvesting. Some courts have held that the title to mature, but unharvested, crops does not pass with the title to the realty

because the mature crops are personal property since they are no longer dependent upon the soil for nutriment. 21A AM. JUR.2d, *Crops* § 14, citing *Wood v. Wood,* Col.Supr., 116 Colo. 593, 183 P.2d 889 (1947). If this is the law of Delaware, there would remain a question of fact as to whether or not the soybeans were still drawing nutriment from the soil at the time of the Sheriff's Sale.

In those jurisdictions which hold that there is no exception to the general rule for matured crops, emphasis is placed upon the great degree of uncertainty as to when crops are mature and have ceased being nurtured by the soil. See *Langford v. Hudson,* supra, and *In Re Andersen's Estate,* Neb.Supr., 83 Neb. 8, 118 N.W. 1108 (1908).

### V

While there is apparently no Delaware case on point, a Delaware court has expressed concern about the uncertainty inherent in a determination of maturity of crops. *Cubbage v. Clements,* Del.Super., 14 A.2d 378 (1940). In *Cubbage* the Superior Court was asked to decide whether a levy of execution could be had upon unharvested, immature crops as opposed to mature, though unsevered, crops. The Court refused to draw a distinction between mature and immature crops, alluding to the apparent paradox that a crop which had not been harvested would be part of the realty one moment and would suddenly become a chattel the next moment because it was technically mature and harvest-ready.

### VI

The cases holding that in the case of matured crops there is an exception to the general rule that title to growing crops follows the title to the land are unpersuasive. The uncertainty and difficulty in deciding when a crop ceases to draw nutriment from the soil are readily apparent. Individual plants will mature at different times. A question therefore necessarily arises as to whether all plants in a field are mature or only some.

Those cases granting an exception also seem to be based on a misconception of the nature of nutriment. WEBSTER'S *New Collegiate Dictionary* (1976), defines "nutriment" as "something that nourishes or promotes growth and repairs the natural wastage of organic life." It is difficult to imagine any point before actual severance from the land when a crop would not be taking some nutriment from the soil. Water is a nutriment, and most crops do not cease to draw moisture from the ground until severance or the plant would wither and die.

I therefore reject the line of cases which provide an exception for matured crops from the general rule that title to crops pass with the title to the land. It is undisputed that the crops in question had not been harvested and severed and therefore the plaintiffs acquired title to the soybeans when they received their title to the land upon which they were growing. The plaintiffs' motion for summary judgment therefore must be granted.

### VII

It is asserted by the Trustee in Bankruptcy of the defendants that even if the purchasers of the lands at the foreclosure sale gained title to the crops by purchasing the real property, the defendants have a right to a quasi-contractual recovery for services provided in harvesting the soybeans.

The quasi-contractual relationship is based upon the doctrine of unjust enrichment and is imposed by law in order to work justice without reference to the actual intention of the parties. *Bellanca Corporation v. Bellanca,* Del.Supr., 169 A.2d 620 (1961). In deciding whether to require restitution, I must not disregard equitable principles and must prevent unjust enrichment. *Branca v. Branca,* Del.Supr., 443 A.2d 929 (1982).

On October 20, 1983, in response to a request for a preliminary injunction by the plaintiffs, I entered an Order permitting the defendants to remove the soybeans

but requiring that the proceeds be deposited in an escrow account to await a decision as to the title to the crop. It was imperative that the soybeans be harvested immediately because they were ready to be harvested and at that time of year destruction of the crop by adverse weather was threatened. I permitted the defendants to harvest the crop in order to preserve it for the benefit of whomever was determined to be the ultimate owner. There was at least tacit approval of the Order by all parties. If defendants had not harvested the crop plaintiffs would have had to immediately obtain someone else to harvest the soybeans, or the crop would have been lost. The harvesting was done in the best interests of all the parties during a period of time when there was doubt as to the ownership of the crops and pursuant to Court direction. It consequently would unjustly enrich the plaintiffs to deny recovery by the defendants of their actual cost of harvesting the crop.

The amount expended in harvesting the crop is not clear from the record. Judgment is therefore granted to the plaintiffs as to their ownership of the crop but subject to the claim of the defendants for the actual cost of harvesting. Plaintiffs may submit an Order.