## 28567. DEKALB COUNTY, et al. v. CHAPEL HILL, INC.
## 28568. GRIZZLE et al. v. CHAPEL HILL, INC.

ARGUED JANUARY 17, 1974 — DECIDED APRIL 30, 1974 — REHEARING DENIED MAY 21, 1974.

*George P. Dillard,* for DeKalb County.

*Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Richard W. Stephens, George B. Haley, Jr., Emmet J. Bondurant, Jr.,* for Chapel Hill.

*Ronald J. Armstrong,* for Grizzle.

GRICE, Chief Justice.

DeKalb County, A. C. Guhl, Chairman of the Board of Commissioners, the members of the Board, and Allan Johnston, Director of Planning, appeal from the grant of mandamus absolute to Chapel Hill, Inc., in Case No. 28567.

Douglas R. Grizzle and others, residents of the Chapel Hill Subdivision, intervenors opposing the grant of mandamus, appeal from the same judgment in Case No. 28568.

Chapel Hill filed its complaint in the Superior Court of DeKalb County seeking to require the zoning officials of the county to accept for processing its application for a development permit for its proposed construction of apartments and town houses, which had been approved as a part of its community unit development plan, and to issue such permit.

The documents relied on by Chapel Hill were admitted by the appellants. The case was decided on summary judgment based on these documents, and the affidavit of a vice president of Chapel Hill which showed expenditures, as alleged in the complaint, made in reliance on the approval of its plan.

The trial judge granted mandamus absolute and ordered Johnston, in his capacity as Director of Planning of DeKalb County, to accept for processing Chapel Hill's application for a development permit for its proposed construction of apartments and town houses, and to issue such development permit, provided Chapel Hill's application shall comply in full with designated requirements of the DeKalb County Zoning Ordinance.

■ The appellants enumerate as error the overruling of their motion to dismiss the complaint on the grounds that a mandamus nisi had not been granted or

served, and the mandamus had not been heard within the period required by Code § 64-107.

The complaint prayed that mandamus nisi be directed to each of the defendants, requiring them to appear before the court not less than ten nor more than thirty days from the filing of the complaint, as provided by Code § 64-107. However, no mandamus nisi was issued, and the case proceeded under regular process in accordance with Code Ann. § 81A-104 (Ga. L. 1966, pp. 609, 610, as amended).

Code Ann. § 81A-104 was amended in 1972 (Ga. L. 1972, pp. 689-692) by adding subsection (j) as follows: "The methods of service provided in this section may be used as alternative methods of service in proceedings in the court of ordinary and in any other special statutory proceedings, and may be used with, after or independently of the method of service specifically provided for in any such proceeding, and, in any such proceeding, service shall be sufficient when made in accordance with the statutes relating particularly to the proceeding or in accordance with this section." This amendment plainly permits ordinary process to be used in mandamus cases.

The 1972 amendment was not in effect at the time the mandamus complaint was filed on April 7, 1972. The Act was approved on March 31, 1972, but did not specify an effective date, and was therefore not effective until July 1, 1972. Code Ann. § 102-111 (Ga. L. 1968, pp. 1364, 1365; 1969, p. 7). The 1972 amendment adding subsection (j) to Code Ann. § 81A-104 was in effect at the time the trial judge overruled the motion concerning the failure to obtain a mandamus nisi, on August 18, 1972. It could be applied at that time, since it was remedial only. Code § 102-104.

It was not error to overrule the motion to dismiss on the grounds that mandamus nisi had not issued and Code § 64-107 had not been followed.

■ The enumerated errors contending that the court erred in refusing to dismiss the complaint for failure to state a claim, and that it was error to grant the mandamus absolute, will be considered together, since the same basic question is involved, whether Chapel Hill

has the right to compel the DeKalb zoning authorities to issue a permit.

The undisputed facts, which we regard as decisive, appearing in the documents attached to the complaint and submitted on the motion for summary judgment, are those which follow.

On October 10, 1962, a predecessor in title of Chapel Hill presented its application to the DeKalb County Board of Adjustments for approval of a *Community Unit Development Plan* in designated lots in DeKalb County, consisting of 1,078 acres zoned R-85 Single Family Residential. The detailed plan included specified acres for commercial property, schools, churches, community center, parks, single family residences, town houses, and multi-family dwellings, the school acreage to be dedicated to DeKalb County without charge, and the park acreage to be improved by the applicant and then conveyed to the county. No one appeared in opposition to the plan, and it was approved by the Board of Adjustments, after due notice and public hearing.

On August 14, 1963, a vice president of Chapel Hill presented to the Board of Adjustments a revision of the plan, showing new school locations, explaining that the Board of Education did not approve of the school sites shown on the original plan. The Board of Adjustments approved this revised plan.

On September 16, 1963, the application of Chapel Hill to the DeKalb County Planning Commission to change the zoning classification of property shown on its plan as a shopping center from residential to commercial was approved, and this zoning change was approved by the Board of Commissioners of DeKalb County on September 24, 1963.

On April 13, 1966, preliminary development plans for the "Chapel Hill Townhouses and Apartments," were approved by the Board of Adjustments.

On August 31, 1966, Chapel Hill deeded property to the DeKalb County Board of Education for school purposes. A school has been built on a part of this property.

On November 22, 1966, the Board of Commissioners amended the DeKalb Zoning Ordinance relating to

*Community Unit Development Plans* by providing that approval of such plans would not be construed as a change of zoning.

A memorandum of the DeKalb County Planning Department dated March 26, 1970, recited that, in view of the original decision by the Board of Adjustments in 1962, DeKalb County would allow Chapel Hill to use property for apartments shown on a site plan approved March 13, 1968, without rezoning. The provisions of this memorandum were set out in a letter to Chapel Hill, dated March 27, 1970. The letter stated that the Planning Department, on behalf of the DeKalb County Planning Commission, would initiate the rezoning of the properties to be developed for apartments.

On May 19, 1970, the DeKalb County Planning Commission initiated an application for rezoning from residential to apartment use of the property formerly approved for apartment development by Chapel Hill. The Planning Department considered that Chapel Hill had a vested right in this change in zoning since its plan was approved at a time when no rezoning was required where a Community Unit Development Plan was approved.

At a meeting of the DeKalb County Commissioners on June 9, 1970, the application of the Planning Commission to rezone the portion of the Chapel Hill property planned for apartments was denied. The subsequent request of Chapel Hill for acceptance of its application for development permit was denied by the Director of the Planning Department.

The affidavit of the vice president of Chapel Hill, submitted on the motion for summary judgment, stated that: In reliance on the approval of its Community Unit Development Plan it has expended over $50,000 in developing a lake and a recreational area. It has installed 2,000 linear feet of a sewer line for the anticipated apartments and town houses. It has lost approximately $30,000 as the result of having to rescind a contract for the sale of the property on which the apartments and town houses were to be constructed. The diminution in value of the 125 acres planned for apartments and town houses, which can now be used only for single family dwellings, is approximately $1,500,000.

Chapel Hill contends that it has acquired a vested property right, protected by the State and Federal Constitutions, by reason of its actions and expenditures made in reliance upon the approval of its plan.

The appellants contend that the action of the Board of Adjustments in approving the plan was beyond the power granted to such board, illegal, null, and void, and that Chapel Hill can have no vested interest in a totally void order entered by the Board of Adjustments.

At the time the original plan was submitted and approved, Art. XIX, Par. "O," of the 1956 Zoning Ordinance of DeKalb County provided for a "community unit development" plan for a tract of land comprising not less than 40 acres, "the proposed design of which makes it desirable to apply regulations more flexible than those contained in this ordinance." This paragraph provided that such development may contain *residential uses of various types* and allied uses such as churches, parks, and day nurseries.

When the zoning ordinance was enacted, the Constitution, Art. III, Sec. VII, Par. XXIII (Code Ann. § 2-1923) authorized the General Assembly to grant the governing authorities of counties the authority to pass zoning and planning laws. (This constitutional provision was repealed by implication by the Home Rule Amendment of 1966, insofar as it applied to unincorporated areas. *Johnston v. Hicks*, 225 Ga. 576 (170 SE2d 410)).

The General Assembly in 1956 enacted an Act entitled "DeKalb County Planning Commission" which included the provision that the governing authority of the county might create by resolution a Board of Zoning Adjustments. The board was given certain powers on appeal, and also the power to "hear and decide special exceptions to the terms of the ordinance or resolution upon which such board is required to pass under such ordinance or resolution."

Under the constitutional and legislative authority above cited, in effect at the time, the DeKalb Board of Commissioners had the right to enact the 1956 zoning ordinance referred to above, giving the Board of Adjustments the duty and authority to approve

*Community Unit Development Plans* as exceptions to the zoning ordinance.

After Chapel Hill had expended substantial sums in developing its property, and had dedicated park and school property to the county, all in reliance on this approval, vested rights were acquired by it which can not be destroyed by the enactment of a later ordinance which required that rezoning be obtained for community unit development plans, and thereafter denying the necessary rezoning. Compare: *Clairmont Development Co., Inc. v. Morgan,* 222 Ga. 255 (149 SE2d 489); *Keenan v. Acker,* 226 Ga. 896 (178 SE2d 196).

There was no error in the order refusing to dismiss the complaint for failure to state a claim, or in the judgment granting mandamus absolute.

*Judgments affirmed. All the Justices concur.*