S99G1606. JACKSON v. SHADIX et al.
S99G1658. CARROLL COUNTY et al. v. SHADIX et al.
(533 SE2d 706)

BENHAM, Chief Justice.

We granted the writ of certiorari in this case to consider the decision by the Court of Appeals that a special purpose local option sales tax (SPLOST) authorized by a referendum in Carroll County terminated when the maximum amount of revenues specified in the referendum was raised, not when the maximum time period for collecting the tax had expired.[1] Because we disagree with the finding of ambiguity on which the decision of the Court of Appeals is based, we reverse its judgment.

On July 13, 1993, the Carroll County Board of Commissioners adopted a resolution calling for the submission to voters of a referen-

---

[1] *Shadix v. Carroll County*, 239 Ga. App. 191 (521 SE2d 99) (1999).

dum for the imposition of a special purpose local option sales tax.[2] In the resolution, the Board set forth the uses for which the SPLOST proceeds were to be used, which included the funding of road, street, and bridge projects, as well as funding for fire protection and recreation, and for water, sewer and jail projects.

The County Commission Chairman published a Notice of Election concerning the SPLOST referendum, and the issue appeared on the November 2, 1993, ballot, reading as follows:

> Shall a special [one] percent sales and use tax be imposed in Carroll County for the raising of not more than $34,000,000 for a period of time not to exceed four (4) years, for paving, resurfacing, traffic control and improvement to the system of roads, streets and bridges within the county; and for a period of time not to exceed five (5) years for the purpose of funding capital improvements relating to fire protection services, recreational facilities, public buildings and water and sewerage projects within the county and its respective municipalities?

Carroll County voters approved the referendum, and the SPLOST was implemented. On April 1, 1994, the State Revenue Commissioner began to collect and administer the tax. As of May 21, 1998, the Revenue Commissioner had collected gross SPLOST revenues in the approximate amount of $34,009,170. By June 1998, the Commissioner had distributed SPLOST revenues to Carroll County in the approximate amount of $34,285,209. In August 1998, appellees, a Carroll County resident and a taxpayers' group, sought declaratory and injunctive relief to stop Carroll County and the State Revenue Commissioner from continuing to collect and disburse SPLOST revenues. In their complaint, appellees asserted that under the referendum's terms, the Carroll County SPLOST automatically terminated when the Commissioner had collected $34 million. The trial court rejected that claim, and ruled that the SPLOST would not terminate until expiration of the maximum period of time the referendum permitted for the collection of SPLOST revenues, which the trial court interpreted as five years after the tax's implementation (March 31, 1999). The Court of Appeals found that the statute was ambiguous regarding the termination of a mixed-purpose SPLOST and construed the ambiguity it perceived against Carroll County.

1. The statute in question, the 1987 version of OCGA § 48-8-112,

---

[2] See Ga. L. 1992, pp. 2998, 3005; OCGA § 48-8-111 (allowing counties to impose special purpose taxes for a limited period of time and for one or more statutorily authorized purposes, upon approval by referendum). See generally OCGA § 48-8-110 et seq.

provided for termination of SPLOSTs as follows:

> (1) If the [tax] resolution . . . provided for the issuance of general obligation debt . . . [at] the end of the first calendar quarter ending more than 80 days after [validation of the debt is denied];
> (2) On the final day of the maximum period of time specified for the imposition of the tax; or
> (3) If the tax was imposed solely for purposes other than road, street and bridge purposes, as of the end of the calendar quarter during which the commissioner determines that the tax will have raised revenues sufficient to provide to the county net proceeds equal to or greater than the amount specified as the maximum amount of net proceeds to be raised by the tax.[3]

The statute thus plainly provided for only three measures for determining the termination date of a SPLOST. The first was applicable only when the resolution provided for general obligation debt, which was not the case here. The third measure applied only when the tax was imposed "solely for purposes other than road, street and bridge purposes," and was not applicable to the tax here because the tax was imposed in part for road, street, and bridge purposes. The second measure, however, which was not limited by the purpose of the tax or by a requirement for general obligation debt, as the other two measures were, provided for termination of the tax at the end of the period established in the referendum. The unmistakable and unambiguous meaning of those provisions was that a SPLOST that was not limited to purposes other than road, street, and bridge purposes, and that did not provide in its resolution for general obligation debt, was to be measured by the period of time specified in the resolution.

The "implications" drawn by the Court of Appeals from other parts of the statute do not require a contrary interpretation. None of the statutory provisions relating to the amount specified in the referendum apply to the SPLOST in the present case because OCGA § 48-8-111 (a) (3), as it existed in 1987, provided that if the "tax is to be imposed in whole or in part for road, street, and bridge purposes the maximum cost and maximum proceeds to be raised shall be omitted." Since the purposes for the tax here included road, street, and bridge purposes, the amount to be raised was not a necessary element of the proposal. Thus, no amount need have been specified at all. The fact that the taxing authority sought to provide more information to the voters than the statute required (i.e., the amount of the taxes to be

---

[3] Ga. L. 1987, p. 1322, codified at OCGA § 48-8-112 (b) (1)-(3) (1987).

raised that would be spent on road, street, and bridge purposes) is no basis for invalidating the entire scheme of taxation. Finally, as noted by Judge Eldridge in his dissent below, the legislature's 1997 amendment of OCGA § 48-8-112 (b) (3), providing that SPLOSTs established for mixed purposes will terminate when the amount provided for has been collected, indicates the General Assembly's belief that the time-based termination provision in the 1987 version of OCGA § 48-8-112 (b) (2) controlled the termination of SPLOSTs such as the one involved here.

2. Whether, as Judge Eldridge argued in his dissent in the Court of Appeals, the language of the referendum ballot quoted above is considered merely a form by which approval of a tax, the details of which are controlled by statute, is accomplished, or the ballot language is regarded as an agreement between the County and its taxpayers, the language employed here was sufficiently clear without convoluted legal analysis. From a common-sense reading of the text of the referendum in the context of the controlling statute, it is unmistakable that the "maximum period of time specified for the imposition of the tax" was five years: there were only two time periods specified, and the longer of the two was five years. To hold that any other time period controls this tax requires turning the statutory language and the wording of the referendum on their heads.

An analysis of the statute and the referendum persuades us that the trial court was correct in holding that the SPLOST was to terminate after five years, not after collection of the amount mentioned in the referendum. Thus, the Court of Appeals erred in reversing the judgment of the superior court, requiring that this Court, in turn, reverse the judgment of the Court of Appeals.

*Judgment reversed. All the Justices concur, except Sears, Thompson and Hines, JJ., who dissent.*

SEARS, Justice, dissenting.

What you see is what you get, correct? Not according to today's majority opinion.

The referendum presented to and approved by the voters of Carroll County stated that the proposed special purpose local option sales tax ("SPLOST") would be imposed "for the raising of **not more than $34 million.**" The majority opinion, however, construes the term "$34 million" to mean "**$34 million, plus whatever additional amount can be collected before the expiration of five years.**" In order to achieve this result, the majority ignores several basic principles of statutory construction. Therefore, I respectfully dissent.

1. The 1987 version of the Revenue Code was in effect at the time the Carroll County SPLOST was approved and implemented, and

governs the resolution of this appeal. OCGA § 48-8-112, as set forth in the 1987 Code, provided that a SPLOST would terminate on the earliest of the following dates:

> (1) If the [tax] resolution . . . provided for the issuance of general obligation debt . . . [at] the end of the first calendar quarter ending more than 80 days after [validation of the debt is denied];
> (2) On the final day of the maximum period of time specified for the imposition of the tax; or
> (3) If the tax was imposed solely for purposes other than road, street and bridge purposes, as of the end of the calendar quarter during which the commissioner determines that the tax will have raised revenues sufficient to provide to the county net proceeds equal to or greater than the amount specified as the maximum amount of net proceeds to be raised by the tax.[4]

The Carroll County SPLOST at issue in this matter is a mixed purpose SPLOST — it is intended for both road purposes and capital improvements, with no provision for the issuance or relief of general obligation debt. Thus, subsection one of the statute, which applies only to SPLOSTS intended for the issuance of general obligation debt, does not control when the Carroll County SPLOST terminates. Nor does subsection three of the statute control the termination of the Carroll County SPLOST, as that subsection applies to SPLOSTS intended solely for road-related purposes. Therefore, the termination point for the Carroll County SPLOST is determined under subsection two of OCGA § 48-8-112, which **requires** that collection of the SPLOST will end "on the final day of the maximum period of time specified for the imposition of the tax."[5]

As conceded by the majority, the "maximum period of time" for imposition of the Carroll County SPLOST is "specified" in the terms of the referendum presented to Carroll County's voters in 1993, which provided that the SPLOST would:

---

[4] Ga. L. 1987, p. 1322, codified at OCGA § 48-8-112 (b) (1)-(3) (1987).

[5] Id. Of course, it is not entirely clear that OCGA § 48-8-112 (2) does apply to this matter, as the 1987 Code does not plainly state that subsection two applies to mixed purpose SPLOSTS such as exists here. While the majority fails to address this ambiguity, it appears that the Legislature has alleviated problems arising therefrom, as the 1997 Revenue Code provides that all SPLOSTs terminate when the maximum amount of revenues has been raised. Ga. L. 1997, p. 519 § 1. Contrary to the majority, see op. at 633-634, I believe it is obvious that the Legislature enacted the 1997 amendments because it was aware of the ambiguity in the 1987 Code that underlies this particular matter, and sought to rectify the problems arising therefrom.

- Terminate after the period of time required to raise no more than $34 million; and
- Terminate after a period of time not to exceed four (4) years, for the purpose of improving the County's system of roads, streets and bridges; and
- Terminate after a period of time not to exceed five (5) years for the purpose of funding certain capital improvements.

Construing this referendum language by its plain terms, as this Court is statutorily required to do,[6] I conclude that it was impossible for the voters of Carroll County, when faced with the referendum, to know the "maximum period of time specified" for the SPLOST's imposition. Nothing in OCGA § 48-8-112 prohibited a local government from making the termination date dependent upon the raising of a specified amount of revenue. Accordingly, the referendum began by stating that the SPLOST would terminate once $34 million was raised. The referendum then stated that the SPLOST would last for four years, for road, street and bridge purposes. The referendum then went on to state that the SPLOST would terminate after five years, for capital improvement purposes.

Faced with these various termination dates, it is likely that Carroll County voters were unable to make an educated decision as to when the tax would end. The referendum stated that the tax would cease after either four or five years, or after the period of time required to raise $34 million. Of those three possible termination dates, the "maximum period of the time specified" for the tax could not have been four years (even though that is what the referendum specified for taxes raised for road improvement purposes). However, Carroll County voters could only speculate as to whether the "maximum period of time specified" for the tax was five years or, alternatively, however long it took to raise $34 million.

The majority concludes that the longest period of time specified in the referendum for the SPLOST's imposition was five years, and hence SPLOST revenues could be collected for that long. However, that conclusion could not have been clear to all of Carroll County's voters who voted on the referendum in 1993. Those voters had no way of knowing whether $34 million *would or even could* be raised within five years. It was possible that the $34 million could be raised in three or four years, and a Carroll County voter might have believed the SPLOST would terminate at that time. Thus, on its face, the referendum was uncertain as to the "maximum period of time

---

[6] See OCGA § 1-3-1 (b).

specified" for imposition of the Carroll County SPLOST. On the one hand, it may have been five years. On the other hand, it simply may have been the period of time necessary to raise $34 million. And this ambiguity left Carroll County voters to guess as to when the SPLOST they were voting on would terminate.

The law does not tolerate ambiguities in taxation provisions, such as existed in the Carroll County referendum. As made clear by precedent, we are bound to construe all ambiguities concerning the power to tax in favor of the taxpayers and against the taxing entity. Whenever the terms under which a tax is levied are "not clear and positive . . . or . . . [are] open to various interpretations through indefiniteness of . . . provisions, it is to be construed most strongly against the government and in favor of the citizen."[7] Furthermore, this Court "construe[s] all doubtful cases against the power to tax and in favor of the taxpayer. . . . 'If there is any doubt as to the power of the county to tax in a particular instance, it must be resolved in the negative.' "[8]

It follows that in this case, the ambiguity that existed in the 1993 Carroll County referendum concerning the date for termination of the mixed-purpose SPLOST must be resolved in favor of the earliest possible removal of the taxation burden from Carroll County's taxpayers. The specified amount of revenues to be collected pursuant to the Carroll County SPLOST — $34 million — was collected before the expiration of five years. Hence, this Court is bound to rule that the Carroll County SPLOST terminated when the maximum amount of revenues had been raised, which the record indicates was early in 1998.

2. Under the 1987 version of OCGA § 48-8-111 (a) (3), voter resolutions seeking approval of a SPLOST were required to specify "the maximum cost of the project" to be funded by the tax, "which shall also be the maximum amount of net proceeds to be raised by the tax." A referendum ballot for a SPLOST also was statutorily required to designate the maximum amount that could be collected pursuant to the SPLOST, and revenues in excess of that amount were not allowed.[9]

However, under the 1987 version of OCGA § 48-8-111 (b) (3), if a SPLOST was to be imposed, in whole or in part, for road improvement purposes (as was the Carroll County SPLOST), "the maximum cost and maximum proceeds to be raised shall be omitted." Despite this provision, Carroll County elected to specify in its ballot that the

---

[7] (Citation omitted.) *Thompson v. Georgia Power Co.*, 73 Ga. App. 587, 597 (37 SE2d 622) (1946).

[8] (Citation omitted.) *Chanin v. Bibb County*, 234 Ga. 282, 286 (216 SE2d 250) (1975).

[9] OCGA § 48-8-111 (c), (d).

maximum amount of SPLOST revenues it would collect was $34 million. Having made that affirmative representation to its citizens, the County should not be allowed to negate it under subsection (b) (3). By ruling otherwise, the majority has effectively sanctioned ballot language that made an affirmative misrepresentation to the voting public.

In this regard, the majority incorrectly concludes that, in setting $34 million as the maximum amount of SPLOST revenues to be raised, the County simply sought to provide more information to the voters than was required.[10] Quite to the contrary, having informed its citizens that no more than $34 million would be collected under the SPLOST, the County was bound by the general statutory scheme set forth in the 1987 version of OCGA § 48-8-111 (a) (3), (c) and (d) to terminate the SPLOST once that amount of revenue was raised. Indeed, if the majority is correct and the SPLOST was not intended to terminate upon the raising of $34 million, but instead was intended to exist for five years regardless of how much revenue was raised, then why did the referendum presented to Carroll County's citizens state that the tax was to be imposed "for the raising of *not more than $34 million?"*

Because the majority opinion fails to satisfactorily address that particular question, in addition to all of the other reasons discussed above, I respectfully dissent.

I am authorized to state that Justice Thompson and Justice Hines join me in this dissent.

·DECIDED JULY 10, 2000 —
RECONSIDERATION DENIED JULY 28, 2000.

■■■■■■■■■■

*Thurbert E. Baker, Attorney General, Daniel M. Formby, Deputy Attorney General, Warren R. Calvert, Senior Assistant Attorney General, David A. Runnion, Assistant Attorney General,* for Jackson.

*David A. Basil, Carothers & Mitchell, Richard A. Carothers, Thomas M. Mitchell,* for Carroll County.

*Gary P. Bunch,* for Shadix.

*R. Mark Mahler, James F. Grubiak, Kelly J. Pridgen, Walter E. Sumner, Ernest De Pascale, Jr., Lee, Black, Scheer & Hart, R. Jonathan Hart, Emily E. Garrard,* amici curiae.

---

[10] Op. at 633-634.