S03A1444. HAUGEN v. HENRY COUNTY et al.
(594 SE2d 324)

CARLEY, Justice.

In September of 1996, the voters of Henry County passed a referendum authorizing the imposition of a Special Purpose Local Option Sales Tax (SPLOST) for a period of five years. The tax was intended to raise not more than $60 million for road and street repair, as well as for specified capital projects. During the five-year period, the tax generated more than $71.8 million in revenue. Although $60 million was spent for the stated purposes, certain of the projects remained incomplete. When the County proposed to expend the additional SPLOST funds on the unfinished projects, James L. Haugen, who is a resident and taxpayer of the County, instituted an action seeking mandamus and injunctive relief. He alleged that, pursuant to OCGA § 48-8-121 (g) (1) (B) and (g) (2), any "excess proceeds" must be used to reduce ad valorem taxes.

The County moved to dismiss and the trial court granted the

---

[8] *Healey v. City of Atlanta*, 125 Ga. 736, 737 (54 SE 749) (1906).

motion on procedural and on substantive grounds. It found that Haugen had failed to comply with OCGA § 9-6-27 (a), because no mandamus nisi was granted and served on the County. It also concluded that there were no "excess proceeds" as defined by OCGA § 48-8-121 (g) (1) (B) and (g) (2). Haugen appeals from the order of the trial court dismissing all claims against the County.

1. Under OCGA § 9-11-4 (k), "ordinary process" may be used in a mandamus action as an alternative method of service to that authorized by OCGA § 9-6-27 (a). *DeKalb County v. Chapel Hill*, 232 Ga. 238, 239 (1) (205 SE2d 864) (1974). Thus, Haugen's failure to comply with OCGA § 9-6-27 (a) is immaterial, because he served the County in the ordinary manner. The County's reliance on OCGA § 9-11-81 is misplaced, since OCGA § 9-6-27 (a) complements, rather than conflicts with OCGA § 9-11-4 (k), which expressly establishes that

> [t]he methods of service provided in this Code section may be used as alternative methods of service . . . in any other special statutory proceedings . . . and, in any such proceeding, service shall be sufficient when made in accordance with the statutes relating particularly to the proceeding or in accordance with this Code section.

See *In the Matter of: Inquiry Concerning a Judge*, 265 Ga. 326, 329 (2) (454 SE2d 780) (1995) (using OCGA § 9-6-27 as the alternative to OCGA § 9-11-4). Accordingly, the trial court erred in dismissing the action on procedural grounds.

2. The tax was in effect for the full five-year period. See *Jackson v. Shadix*, 272 Ga. 631, 632 (1) (533 SE2d 706) (2000) (construing former OCGA § 48-8-112, which is controlling here as well). However, *Shadix* did not concern and, thus, is not dispositive of, the substantive issue of statutory construction that is presented here. Under OCGA § 48-8-121 (g) (1) (B), the taxing authority receives excess net SPLOST proceeds to the extent that the revenue obtained is "in excess of the maximum cost of the project or projects stated in the resolution . . . or in excess of the actual cost of such project or projects . . . ." OCGA § 48-8-121 (g) (2) provides, in relevant part, that the County can use such excess proceeds only to reduce its ad valorem taxes. The maximum cost of the projects stated in the SPLOST resolution was $60 million, but the actual cost of the projects exceeds that amount. Accordingly, the issue to be decided is whether the County is entitled to use the $11.8 million plus accrued interest to complete the projects before it can be charged with possessing any "excess" SPLOST proceeds.

"The natural meaning of 'or,' where used as a connective, is " 'to mark an alternative and present choice, implying an election to do

one of two things . . . ." ' [Cit.]" *Gearinger v. Lee*, 266 Ga. 167, 169 (2) (465 SE2d 440) (1996). Thus, OCGA § 48-8-121 (g) (1) (B) provides that SPLOST proceeds are considered to be "excess" either when they are greater than the cost of the project specified in the resolution or when they are greater than the actual cost of the project. The determinative factors are the estimated and the actual costs of the project. However, the statute does not expressly provide which alternative applies where, as here, the net tax proceeds exceed the estimated, but not the actual, cost of the project. The dissent simply assumes that, because the General Assembly used the word "or" to separate the two alternatives, whichever cost is the lesser would control, with the result that the estimated cost establishes the maximum amount of SPLOST revenue that can be expended on the project. As soon as the tax proceeds reach an amount equal to the estimated cost, all additional proceeds are deemed excess. Thus, according to that interpretation, once the County raised the $60 million specified in the resolution, all further SPLOST revenues were excess even though the projects had not been completed.

There is nothing in the statute to support the conclusion that the estimated cost invariably controls over the actual cost. By using the word "or," the General Assembly anticipated that, on occasion, actual cost would be the applicable standard for determining "excess proceeds." The construction of the statute advanced by the dissent leads to the anomalous result that the County cannot use available SPLOST revenues to complete those very projects for which the tax was expressly proposed, approved and imposed. However, one of the cardinal rules of statutory construction requires the courts to "consider the consequences of any proposed interpretation and not construe the statute to reach an unreasonable result unintended by the legislature. [Cit.]" *Trust Co. Bank v. Ga. Superior Court Clerks' Cooperative Auth.*, 265 Ga. 390 (1) (456 SE2d 571) (1995). " ' "The construction (of statutes) must square with common sense and sound reasoning." ' [Cit.]" *Thornton v. Clarke County School Dist.*, 270 Ga. 633, 634 (1) (514 SE2d 11) (1999). Moreover, "[l]anguage in one part of the statute must be construed in light of the legislature's intent as found in the whole statute. [Cit.]" *Echols v. Thomas*, 265 Ga. 474, 475 (458 SE2d 100) (1995). OCGA § 48-8-121 (g) (1) (B) does not exist in isolation. OCGA § 48-8-121 (a) (1) expressly provides that "[t]he proceeds received from the tax authorized by this article shall be used by the county exclusively for the purpose or purposes specified in the resolution or ordinance calling for imposition of the tax." "Shall," "exclusively" and "purpose or purposes specified" are all clear and unambiguous terms. Thus, to satisfy the mandatory requirement imposed by OCGA § 48-8-121 (a) (1), the taxing authority must necessarily use all SPLOST proceeds to complete the projects for which

the tax was imposed, before any revenue derived from the tax can be deemed to be "excess" and available for use in connection with another purpose. The County

> is bound . . . to complete all projects . . . unless circumstances arise which dictate that projects which initially seemed feasible are no longer so. In this regard the governing authority has discretion to make adjustments in the plans for these projects, but may not abandon the projects altogether.

*Dickey v. Storey*, 262 Ga. 452, 456 (3) (423 SE2d 650) (1992). Therefore, as a matter of law, there can be no "excess" SPLOST proceeds so long as revenue is available and the projects specified in the resolution imposing the tax have not been completed.

Accordingly, the only construction of OCGA § 48-8-121 (g) (1) (B) which comports with sound reasoning and the entirety of the statute of which it is a part is that the actual cost, rather than estimated cost, establishes the maximum amount of SPLOST revenue that can be expended. While estimated "or" actual cost are the applicable standards for determining "excess proceeds," on those occasions when actual cost exceeds estimated cost, actual cost is the determinative standard. Thus, even though the tax proceeds received by the taxing authority may exceed the estimated cost of any given unfinished project, no "excess" proceeds exist so long as the project remains incomplete. To hold otherwise would render OCGA § 48-8-121 (a) (1) meaningless and sanction the unnecessary abandonment of projects based upon a good-faith, but incorrect estimate as to the effect of inflation or other variables on the actual cost to complete them.

The judiciary has the duty to reject a construction of a statute which will result in unreasonable consequences or absurd results not contemplated by the legislature. *General Electric Credit Corp. of Ga. v. Brooks*, 242 Ga. 109, 112 (249 SE2d 596) (1978). The General Assembly did not intend that a taxing authority be precluded from expending available SPLOST proceeds on unfinished projects simply because the original estimate of the cost of completion was too low. The trial court correctly interpreted the relevant statutory provisions and, therefore, properly dismissed Haugen's petition on substantive grounds.

*Judgment affirmed. All the Justices concur, except Sears, P. J., Thompson and Hines, JJ., who dissent.*

HINES, Justice, dissenting.

I agree with Division 1 of the majority opinion that OCGA § 9-

11-4 (k) permits ordinary process as a means of service in a mandamus action. However, I respectfully dissent to the holding in Division 2 that the superior court properly dismissed the taxpayer's petition on substantive grounds. The superior court erred in its application of OCGA § 48-8-121 (g) (1) (B) to find that taxpayer Haugen's claims failed as a matter of law.

The pivotal question in this case is whether the $11.8 million in net tax revenues, collected over and above the $60 million amount specified in both the authorizing resolution and the referendum voted on by the taxpayers of Henry County, qualifies as "excess proceeds" under OCGA § 48-8-121 (g) (1) (B), and therefore, is required to be used to reduce ad valorem taxes. See OCGA § 48-8-121 (g) (2).[1] The strained analysis of the majority completely nullifies the statutory provision and deprives the taxpayers of the rightful reduction of their tax burden.

OCGA § 48-8-121 (g) (1) (B) plainly defines "excess proceeds" as net tax proceeds "in excess of the maximum cost of the project or projects stated in the resolution or ordinance calling for the imposition of the tax *or* in excess of the actual cost of such project or projects." (Emphasis supplied.) The statute is not ambiguous. As the majority acknowledges, the statutory language is in the disjunctive, and the well-settled meaning of the connective "or" is that it presents an alternative choice, that is, an election of one of two things. *Gearinger v. Lee*, 266 Ga. 167, 169 (2) (465 SE2d 440) (1996); *Ga. Paper Stock Co. v. State Tax Bd.*, 174 Ga. 816, 819 (164 SE 197) (1932). "[W]hen the language of a statute is plain and unambiguous, judicial construction is forbidden. *Six Flags Over Ga. v. Kull*, 276 Ga. 210, 211 (576 SE2d 880) (2003)." *Jennings v. McIntosh County Bd. of Commrs.*, 276 Ga. 842, 845 (3) (583 SE2d 839) (2003). Yet, the majority takes it upon itself to reconstruct the statute in order to avoid what it characterizes as the "anomalous result that the County cannot use available SPLOST revenues to complete those very projects for which the tax was expressly proposed, approved[,] and imposed." But the majority's reasoning is the anomaly.

The statute provides that there are "excess proceeds" in two instances – when the net tax revenues exceed the maximum cost of the project or projects specified in the resolution or ordinance, or

---

[1] OCGA § 48-8-121 (g) (2) provides:
Excess proceeds subject to this subsection shall be used solely for the purpose of reducing any indebtedness of the county other than indebtedness incurred pursuant to this article. If there is no such other indebtedness or, if the excess proceeds exceed the amount of any such other indebtedness, then the excess proceeds shall then next be paid into the general fund of the county, it being the intent that any funds so paid into the general fund of the county be used for the purpose of reducing ad valorem taxes.

when these revenues exceed the actual cost of such project or projects. The majority scoffs at the estimated cost component of the statute and focuses solely on the fact that certain projects funded by the SPLOST remain uncompleted. Yet it is the estimated cost, in this case $60 million, that is proposed and presented to the taxpayers for their approval. And it is this estimated cost that the General Assembly has clearly determined to be one of two yardsticks by which to measure "excess proceeds" under OCGA § 48-8-121 (g) (1) (B).

Even if the forthright language of the statute could be characterized as ambiguous, and thus susceptible of judicial construction, basic rules of statutory construction will produce the same result. This Court must give a sensible and intelligent effect to each part of the statute. It cannot be presumed that the legislature intended that any part of a statute would be without meaning and mere surplusage. *Transportation Ins. Co. v. El Chico Restaurants*, 271 Ga. 774, 776 (524 SE2d 486) (1999); *Brown v. Liberty County*, 271 Ga. 634, 635 (522 SE2d 466) (1999). What is more, the cardinal rule of statutory construction is to ascertain the intent of the General Assembly. *Kemp v. City of Claxton*, 269 Ga. 173, 175 (1) (496 SE2d 712) (1998). A stated purpose of Ga. L. 1994, p. 1668, applicable to the SPLOST in this case is "to change certain provisions regarding the expenditure of excess proceeds." Id. at 1669. This demonstrates the clear legislative intent that "excess proceeds" can exist in the two instances specified in OCGA § 48-8-121 (g) (1) (B).

Last, but certainly not least, the majority's decision works a grave injustice to the taxpayers of Henry County. The result is that the burden of the uncompleted county projects is shifted to the unwitting taxpayer, rather than holding the taxing authority accountable for a seemingly unrealistic assessment of cost and/or project scope. It forces the taxpayers of Henry County to fund county projects in an amount which was never disclosed, and certainly never approved by them. In the final analysis, it is simply that the taxing authority should say what it means and mean what it says. The taxpayers deserve no less.

I am authorized to state that Presiding Justice Sears and Justice Thompson join in this dissent.

DECIDED MARCH 1, 2004 —
RECONSIDERATION DENIED APRIL 14, 2004.

*James L. Haugen*, pro se.

*O'Quinn & Cronin, Michael A. O'Quinn, Donald A. Cronin, Jr.,* for appellees.

S04A0115, S04A0116. THE STATE v. LEJEUNE; and vice versa.
(594 SE2d 637)

SEARS, Presiding Justice.

Michael B. Lejeune is accused of malice murder committed in December 1997, after which he allegedly cut up the victim's body and burned it in a cemetery. The State is seeking the death penalty. Lejeune has not been tried yet, and Case Nos. S04A0115 and S04A0116 are appeals from rulings on pretrial motions. The same prosecution generated an appeal to this Court last year.[1] In that case, the trial court granted Lejeune's motion to suppress blood evidence found in a search of his apartment, and this Court affirmed because the supporting affidavit for the search warrant lacked probable cause.[2] The Court reversed the trial court's denial of Lejeune's motion to suppress the warrantless search of Lejeune's car under the automobile exception to the search warrant requirement, meaning that blood evidence in the car's trunk seized during that search was also inadmissible.[3]

The instant cases stem partly from the previous holdings on the motions to suppress. In Case No. S04A0115, the State appeals from the trial court's granting of Lejeune's motions to suppress the results of the new searches of Lejeune's apartment and parents' house conducted pursuant to fresh search warrants. In Case No. S04A0116, Lejeune appeals the denial of his plea in bar based upon the doctrines of res judicata, collateral estoppel, and law of the case. He argues that because there had already been an appellate decision holding that the evidence obtained from Lejeune's former apartment and car was inadmissible, the State was barred from re-litigating the admissibility of evidence obtained from those places despite the new search warrants.

## Case No. S04A0115

In 2003, after this Court handed down its decision in *Lejeune,* supra, Rekha Anand, Lejeune's former co-indictee girlfriend, pled guilty to concealing the death of another. She made a statement and agreed to testify on behalf of the State at Lejeune's trial. In her state-

---

[1] *State v. Lejeune,* 276 Ga. 179 (576 SE2d 888) (2003).
[2] Id. at 180-182 (1).
[3] Id. at 182-184 (2).