28471. GOLD KIST, INC. v. JONES et al.

ARGUED JANUARY 14, 1974 — DECIDED MARCH 7, 1974 — REHEARING DENIED MARCH 21, 1974.

*Alston, Miller & Gaines, Francis Shackelford, Ronald L. Reid, W. Terence Walsh, Robert C. Lower, Robert E. Lanyon,* for appellant.

*Culpepper & Culpepper, Sampson M. Culpepper, Arthur K. Bolton, Attorney General, Richard L. Chambers, H. Perry Michael, Assistant Attorneys General,* for appellees.

GRICE, Presiding Justice. The controlling factor in this appeal is whether farm products held by a nonprofit marketing cooperative under contracts with the farmers, either as inventory or processed into other products, can be considered to be "remaining in the hands of the producer" as contemplated by the Georgia Constitution, and therefore exempt from taxation.

The question arose when Gold Kist, Inc. filed a suit in the Superior Court of Peach County against Julian F. Jones, Ordinary, Walter B. Tharpe, Tax Commissioner, J. R. (Reg) Mullis, Sheriff and other officials of that county, seeking to enjoin the assessment and levy of ad valorem taxes upon the inventory of a certain amount of soy beans held by it for sale.

Upon a rule nisi hearing a temporary restraining order was issued against the levy or collection of such taxes.

Subsequently, a motion of the State Revenue Commissioner to intervene as a party defendant was granted.

It was agreed that the case be tried before a judge without a jury upon a stipulation of facts and other evidence consisting of affidavits and depositions.

These showed in material part as follows: that Gold Kist operates a storage facility in Peach County for grain, normally consisting of corn, soy beans, oats, barley and wheat; that there is also a store operation there; that it deals directly with the farmers who bring the grain to the storage facilities; that when a farmer brings his grain in it is weighed and graded; that if a farmer asks for advance payment for such grain it is made according to the market price as of the date of delivery; and that the grain goes into storage and is held for processing at a later date, depending upon when it is needed to go to market.

The evidence also showed that soy beans are stored in grain facilities along with other soy beans in the possession of Gold Kist in a common container, such as a silo or grain elevator; that when

they are processed they are taken to its processing plant in Valdosta, Georgia, where they are ground and made into other products; that during the last year prior to this litigation Gold Kist stored and processed approximately 300,000 bushels of soy beans; that soy beans are normally brought in October, November and December of a given year, immediately after harvest; that Gold Kist's year closes on June 30 of the following year, so that there must be an accounting and settlement with the farmer or producer no later than May 15 in order to complete its records; and that upon final accounting any net margin goes back to the farmer, regardless of who brought the grain in.

It was also undisputed that once the grain or soy beans were stored in Gold Kist's grain elevator or silo it was impossible to return the same grain to the farmer if he wanted it, although he could receive something comparable, because the grain that the member brought in may have been sent to the processing plant or intermingled with other grain.

The evidence further revealed that the only requirement a person has to meet in order to become a member of the co-operative is to sign a membership agreement and do business with Gold Kist; that there are other such co-operatives in Peach County; that any person who brings his grain to Gold Kist can sign an agreement and become a member; and that none of the members has anything to do with the determination of policy of Gold Kist, which is set by a board of directors in Atlanta.

Based upon the facts and the written contract entered into by the producer and Gold Kist, the trial court found in essence as follows: that the producer farmer, upon delivering his grain to Gold Kist, transferred title and received the market price in payment therefor as of the date of delivery; that he had no further control over the grain after delivery and "what happens thereafter is completely out of his hands"; that he had no voice in the final disposition of the products or control over the policies or operations of the business; that "under the terms of the contract between Gold Kist and the producer, Gold Kist obtains title and absolute control over the products," subject only to an accounting at the end of their fiscal year as to whether he receives more or less money; and that "Gold Kist is completely independent of the producer except as to this accounting or settlement as required by the contract."

The trial court found as a matter of law that "it was the intent of the legislation [Ga. Const., Art. VII, Sec. I, Par. IV, Code Ann. § 2-5404; Ga. L. 1913, p. 122, as amended; Code Ann. § 92-201] not

to extend the benefits of the exemption of farm products beyond the producer himself, and to him only for a limited time and only while the products remained in his hands."

Thereupon it dissolved the temporary restraining order, denied the permanent injunction sought by Gold Kist against the collection of ad valorem taxes on inventory held by it, and ordered the check tendered by it into court returned as due for such taxes.

Gold Kist appeals from this order, also urging as erroneous the findings of fact and conclusions of law made therein.

The constitutional provision in question here authorizes the General Assembly to exempt from ad valorem taxation certain property. Among those specified are "farm products, including baled cotton, grown in this State and remaining in the hands of the producer, but not longer than for the year next after their production . . ." Const. Art. VII, Sec. I, Par. IV (Code Ann. § 2-5404). Such an exemption was enacted by the legislature in the language of the constitutional provision (Code Ann. § 92-201, supra).

Although the point was not raised here, for purposes of accuracy it should be noted that the constitutional amendment approved by the people of this state on August 6, 1912 (Ga. L. 1912, p. 36), is as above shown, but that the punctuation was incorrectly quoted and the word "next" omitted in subsequent codifications of this constitutional provision. See Code Ann. § 2-5404. The Act putting into effect the constitutional amendment, its later amendments and the codal annotations of the statutory provisions are also incorrectly punctuated. See Ga. L. 1913, p. 122; 1919, p. 82; 1943, p. 348; 1946, p. 12; 1947, p. 1183; 1955, pp. 262, 263; 1965, pp. 182, 183; 1973, p. 934 (Code Ann. § 92-201).

In our view, the obvious intent of this exemption is to relieve the farmer by giving him a year after harvest in which to sell his products. Therefore, during that period until he sells his products, he is exempt from ad valorem taxation thereupon.

Gold Kist strenuously argues that the exemption should also be applied to farm products which are delivered to it by the farmers because it is the agent of the producer rather than the purchaser of title to the products. It takes the position that nonprofit marketing cooperatives such as it simply stand in the place of the individual farmers, and are thus entitled to whatever exemptions they might receive.

We do not agree.

As we construe the language of these provisions, it does not contemplate an exemption for such products either after an

outright sale, or when placed in the hands of another for future sale or processing with advance payment to the producer. In either case, the underlying reason for the temporary exemption would no longer exist. Therefore it is immaterial whether the contract between the cooperative and its members creates the relationship of buyer-seller or of agency, since only the farmers themselves are intended to receive the benefit of the tax exemption thereunder.

It is well established that "The exemption from taxation must be strictly construed, 'and the exemption will not be held to be conferred unless the terms under which it is granted clearly and distinctly show that such was the intention of the legislature.'" *Cherokee Brick & Tile Co. v. Redwine,* 209 Ga. 691, 693 (75 SE2d 550) (one Justice not participating) and cits.

As held by this court in *Athens City Water-works Co. v. City of Athens,* 74 Ga. 413 (1), "Taxation is the rule and exemption the exception; and, under the constitution of this state, no property except that specifically mentioned can be exempted from taxation." We find it significant that the Cooperative Marketing Act (Ga. L. 1921, p. 139 et seq.; Code Ann. Ch. 65-2), under which Gold Kist was created, includes a provision for the exemption of such co-operatives from license or franchise taxes (Code § 65-225), but that it does not include a provision exempting cooperatives from taxes on their inventory.

Furthermore, a tax exemption cannot be created by implication. *City of Columbus v. Muscogee Mfg. Co.,* 165 Ga. 259, 261 (140 SE 860) and cits. Thus this court has stated that "In interpreting such a constitutional exemption, it is to be presumed that the words therein used were employed in their natural and ordinary meaning [Cit.]; and where a constitutional provision or statute is plain and susceptible of but one natural and reasonable construction, the court has no authority to place a different construction upon it, but must construe it according to its terms. [Cits.]" *Rayle Electric Membership Corp. v. Cook,* 195 Ga. 734, 735 (25 SE2d 574).

Nor do we find anything said in *Ga. Milk Producers Confederation v. City of Atlanta,* 185 Ga. 192 (194 SE 181), (two Justices absent), or the cases cited therein, which are relied upon by Gold Kist in support of its position, to be controlling here. That case turned upon the city's attempt to tax the *accounts receivable* of the co-operative, not its inventory, and this court held that it amounted to a tax on the gross sales of the products in violation of Code § 5-603.

The two cases cited by this court in the *Milk Producers* case,

Yakima Fruit Growers Assn. v. Henneford, 182 Wash. 437 (47 P2d 831, 100 ALR 435), and City of Owensboro v. Dark Tobacco Growers Assn., 222 Ky. 164 (300 SW 350), are likewise distinguishable.

The Washington case involved an attempt to levy an occupational tax on a cooperative association, which, as previously noted, is expressly prohibited by statute in Georgia. Code § 65-225, supra.

The Kentucky case was concerned with the constitutionality of a statute of that state exempting from local taxation un-manufactured agricultural products "in the hands of the producer or in the hands of any agent or agency of the producer," and whether the tobacco co-operative met the definition of an agent.

It is indicative of the point we make here that the Kentucky legislature found it necessary to include the words "any agent or agency" in its exemption statute. Here, even if an agency relationship is created by the contract between Gold Kist and its members, neither our Constitution nor our statutes authorize an exemption from ad valorem taxes for the *agent* of a producer of farm products.

In our view, the trial court correctly found that the clear intent of the Georgia legislation was to grant the benefit of the exemption only to the farmer himself and then only for a limited time. To allow this statute to be extended to include farm products in the hands of Gold Kist, which are irretrievably co-mingled with others, or even converted into different products before their ultimate sale, would make it impossible to determine which products have been stored beyond the period for the exemption and thus be in violation of the constitutional mandate.

Therefore, for the reasons stated above, the judgment of the trial court is affirmed.

*Judgment affirmed. All the Justices concur, except Jordan, J., who dissents.*