## 29966. CHILIVIS v. DIXON.

INGRAM, Justice.

Code Ann. § 92-3403a C (2) (v) provides that, ". . . equipment used exclusively in harvesting . . . crops . . . ," is not subject to the Georgia Sales and Use Tax Act, as amended, under the conditions provided in the statute. The Court of Appeals, in *Blackmon v. Dixon,* 134 Ga. App. 184 (213 SE2d 513), held that portable tobacco barns purchased by the appellee were exempt from the sales tax because they were used in curing tobacco and curing is an essential part of the harvesting process. We granted certiorari and reverse.

The revenue commissioner and the taxpayer come armed with assorted dictionaries providing various definitions of the term "harvest." The Court of Appeals relied upon Funk & Wagnall's New Standard Dictionary of the English Language (1963 Ed.) in deciding that "harvest" means, "to gather and store in a place of safety." It reasoned that tobacco is more susceptible to quick spoilage than most other agricultural products that ripen in the field and so must be immediately taken to a storage place for drying or curing. Therefore, these storage barns used for the curing of the tobacco were a necessary part of the harvesting of the crop.

Other dictionaries contain different definitions and generally limit the term "harvest" to mean "reap" or "gather" as opposed to including the storage of crops in the "harvesting" process.[1] Roget's International Thesaurus (3d Ed., 1962) indicates the term "harvest" is synonymous with such words as "reap," "glean," "gather," and "gather in," but it does not suggest that "harvesting" of a crop includes its storage. The Fourth Edition of Black's Law Dictionary provides that, "harvesting" means, "The *gathering* of crops of any kind. Cook v. Massey, 38 Idaho 264, 220 P. 1088, 1091." (1923). (Emphasis supplied.) Thus, it appears the weight of opinion in the works of the lexicographers we have examined leans against considering a storage facility as a part of the harvesting of the crop.

Against this background of definitional uncertainty that the term "harvesting" includes "storage," it must be borne in mind that this statute is one providing for tax exemption. "It is well established that 'The exemption from taxation must be strictly construed, and the exemption will not be held to be conferred unless the terms under which it is granted clearly and distinctly show that such was the intention of the legislature.' *Cherokee Brick & Tile Co. v. Redwine,* 209 Ga. 691, 693

---

[1]See Webster's Third New International Dictionary (1961 Ed.); Random House Dictionary of the English Language (1966 Ed.); and Funk and Wagnall's Standard Desk Dictionary (1966 Ed.).

(75 SE2d 550) . . ." *Gold Kist, Inc. v. Jones,* 231 Ga. 881, 885 (204 SE2d 584). The present statute reveals no distinct and clear intention on the part of the legislature to exempt from taxation portable drying barns used for the storage of crops.

Our conclusion is further substantiated by a descriptive brochure, included in the record, prepared by the manufacturer of the portable barns involved in this litigation. It states that the portable barns may be used for curing tobacco and drying corn, beans, peanuts and other crops. In other words, the brochure touts the barn as a portable multi-purpose drying barn that can be used for the storage of a number of different crops. For tobacco farming, the manufacturer recommends the portable barn for use with a separate tobacco harvester that permits 7 people to harvest "up to 2 barns per day." As we read the brochure, the manufacturer clearly delineates between the tobacco harvesting equipment it sells and the tobacco curing storage barns.

We have found no Georgia case dealing with this issue and none has been cited to us by the parties. However, we have found several cases of interest from other jurisdictions that are briefly discussed below.

In McNulty v. Dean, 154 Wash. 110, 114 (281 P 9) (1929), that court was concerned with a Washington State statute which provided that a judgment debtor shall be entitled to retain possession of the land during the period of redemption and the purchaser shall have a lien on crops "raised or harvested" during that period. The court held that, "Raised is here used in the sense of matured and harvested in the sense of severed . . ."

In United States v. Watkins, 147 FSupp. 786, 790 (E. D. Ark., 1957), the defendant argued that his action in picking a portion of his cotton crop did not constitute a "harvesting" because he did not put it in a house or barn, did not have it ginned, and did not sell it in the seed or otherwise. The court there was construing regulations under the Federal Agricultural Adjustment Act. It held that, "From a consideration of those regulations we are of the opinion that 'harvest,' as used therein, simply means the 'picking' of the cotton."

In Wirtz v. Osceola Farms Co., 372 F2d 584 (5th Cir.,

1967), that court rejected the appellee's argument that the hauling of sugar cane, after it was cut, from the field to the mill should be considered a part of the "harvesting" of the crop because of the perishable nature of the cane.

Under the facts of this case, we are of the opinion that the portable multi-purpose drying barns are not exempt from the Georgia Sales and Use Tax statute and the judgment of the Court of Appeals must be reversed. In reaching this conclusion, we do not mean to suggest that this interpretation of the Sales and Use Tax Act is agriculturally desirable or that it serves the best interests of the state's promotion of tobacco production in Georgia. We decide the case solely on its facts by an application of the statute as it is presently written by the General Assembly.

*Judgment reversed. All the Justices concur.*

ARGUED JUNE 9, 1975 — DECIDED JULY 1, 1975.

*Arthur K. Bolton, Attorney General, Gary B. Andrews, Assistant Attorney General,* for appellant.
    *W. P. Strickland,* for appellee.