## A09A0628. GRAHAM v. HANNA.

(677 SE2d 686)

BLACKBURN, Presiding Judge.

In his capacity as Commissioner of the Georgia Department of Revenue, Bart Graham issued an assessment of additional income taxes and interest against Frank Hanna, Jr., who appealed the assessment to the Superior Court of Chattooga County. Following motions for summary judgment by both parties, the superior court denied the Commissioner's motion, granted summary judgment to Hanna, and ordered that the tax assessment be set aside. We granted the Commissioner's application for discretionary appeal from the superior court's decision. OCGA § 5-6-35 (a) (1); *Miles v. Collins*.[1] On appeal, the Commissioner contends that the superior court erred in voiding the entire tax assessment despite Hanna's stipulation that part of the assessment was correct, and in interpreting former OCGA § 48-7-27 (d) (2) to allow Hanna to make a larger downward adjustment to his Georgia taxable income than permitted under that statute. We reverse the superior court's grant of summary judgment to Hanna and its denial of summary judgment to the Commissioner.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c); *Britt v. Kelly & Picerne, Inc.*[2] "On appeal from the grant or denial of a motion for summary judgment, we review the evidence de novo, and all reasonable conclusions and inferences drawn from the evidence are construed in the light most favorable to the nonmovant." (Punctuation omitted.) *McCall v. Couture*.[3]

The facts in this matter have been stipulated to by the parties. During the tax years of 2002, 2003, and 2004 (the "tax years at issue"), Hanna was a resident of Georgia and owned 99.9 percent of the shares of Worldwide Assets, Inc. Worldwide's remaining shares were owned by Hanna's brother (James Hanna), who was not a resident of Georgia. Prior to 2002, Worldwide, which was incorporated under the laws of the State of Nevada, elected under § 1362 of the Internal Revenue Code (I.R.C. § 1362) to be classified as a

[1] *Miles v. Collins*, 259 Ga. 536 (384 SE2d 630) (1989).
[2] *Britt v. Kelly & Picerne, Inc.*, 258 Ga. App. 843 (575 SE2d 732) (2002).
[3] *McCall v. Couture*, 293 Ga. App. 305 (666 SE2d 637) (2008).

Subchapter S corporation for federal income tax purposes. Unlike C corporations, which are taxed at the corporate level when the company earns income and again at the shareholder level when the shareholders receive dividends, under I.R.C. § 1366 (a), S corporations do not pay income tax at the corporate level. See *Bone v. Commr. of Internal Revenue*;[4] *A.W. Chesterton Co. v. Chesterton*.[5] Instead, "[t]he corporation's profits pass through directly to its shareholders on a pro rata basis and are reported on the shareholders' individual tax returns." *Gitlitz v. Commr. of Internal Revenue*.[6] See I.R.C. § 1366 (a) (1) (A).

Under Georgia law, a taxpayer's Georgia taxable net income is the same as his federal adjusted gross income, less any relevant adjustments. OCGA § 48-7-27 (a). However, for Georgia corporate tax purposes, "Subchapter 'S' elections apply only if all stockholders are subject to tax in this state on their portion of the corporate income. If all nonresident stockholders pay the Georgia income tax on their portion of the corporate income, the election shall be allowed." OCGA § 48-7-21 (b) (7) (B). Thus, if even a single nonresident shareholder does not consent to pay Georgia income taxes on his portion of the passed-through corporate income, Georgia will not recognize a federally-recognized S corporation for Georgia tax purposes. In such situations, the S corporation must pay taxes at the corporate level on its net income from property owned or from business activities done within the State in the same manner as would a C corporation, pursuant to OCGA §§ 48-7-21 (a) and 48-7-31 (d). Here, because Hanna's brother was a nonresident, who did not consent to paying Georgia taxes on his portion of their company's income, Worldwide was not recognized as an S corporation for Georgia tax purposes. Accordingly, Worldwide filed Georgia income tax returns, reporting that the company had derived approximately $35,000 every year for each of the tax years at issue from the rental of property located in Georgia.

For the tax years at issue, Hanna's proportionate share of Worldwide's income was as follows: $4,836,695 for 2002; $14,339,051 for 2003; and $94,876,061 for 2004. After adding his share of Worldwide's passed-through income, Hanna's federal adjusted gross income for those years was: $5,761,723 for 2002; $10,858,368 for 2003; and $110,023,066 for 2004. In light of the State's nonrecogni-

---

[4] *Bone v. Commr. of Internal Revenue*, 324 F3d 1289, 1291, n. 1 (11th Cir. 2003).

[5] *A.W. Chesterton Co. v. Chesterton*, 128 F3d 1, 3 (I) (1st Cir. 1997).

[6] *Gitlitz v. Commr. of Internal Revenue*, 531 U. S. 206, 209 (I) (121 SC 701, 148 LE2d 613) (2001).

tion of Worldwide as an S corporation for Georgia tax purposes, Hanna adjusted his Georgia taxable income dramatically downward pursuant to former OCGA § 48-7-27 (d) (2), which in relevant part provides:

> Shareholders of a federal Subchapter "S" corporation which is not recognized for Georgia purposes may make an adjustment to federal adjusted gross income in order to avoid double taxation on this type of income. Adjustments will not be allowed unless tax was actually paid by the corporation.

Based on his interpretation of that statute, for each of the tax years at issue, Hanna subtracted from his federal adjusted gross income his entire share of Worldwide's income that had passed through to him.

On August 28, 2007, the Commissioner of the Georgia Department of Revenue determined that for each of the tax years at issue, Hanna had incorrectly adjusted his Georgia taxable net income under OCGA § 48-7-27 (d) (2). Specifically, the Commissioner determined that instead of subtracting from his federal adjusted gross income his entire pro rata share of Worldwide's income that had passed through to him, Hanna should have subtracted only his share of the amount of Worldwide's income on which the company had paid corporate taxes in Georgia. As a result, the Commissioner issued an assessment and demand for payment of $7,755,357.99 in additional taxes and interest against Hanna. In addition, for the tax year 2003, the Commissioner also increased Hanna's Georgia taxable net income by $324,436 to account for an omitted 2002 Georgia depreciation addback carryover.

Pursuant to OCGA § 48-2-59, Hanna appealed the Commissioner's assessment and demand for payment to the superior court. The parties jointly filed a stipulation of facts, in which Hanna stipulated that he was not disputing the Commissioner's increase of $324,436 in his net taxable income for 2003 based on the 2002 addback carryover. Thereafter, both parties moved for summary judgment. On September 15, 2008, the superior court denied the Commissioner's motion, granted summary judgment to Hanna, and voided the Commissioner's additional tax assessments for the tax years at issue. This discretionary appeal followed.

1. The Commissioner first contends that the superior court erred in voiding the assessment in its entirety despite the fact that Hanna had stipulated that he was not disputing the $324,436 increase in his net taxable income for 2003 based on the 2002 depreciation addback carryover. However, we do not agree that the superior court's order voided the 2003 $324,436 increase.

In the first paragraph of its order, the superior court states that "[t]he legal issue before the Court concerns the proper interpretation of the adjustment provided under OCGA § 48-7-27 (d) (2)." In addition to this limiting language, nothing in the court's order refers to Hanna's stipulation to the $324,436 increase in his net taxable income for 2003 based on the 2002 depreciation addback carryover. Thus, we find that the court did not set aside or void that specific stipulated increase in Hanna's Georgia taxable income. Furthermore, as both parties concede, Hanna has fully paid the taxes and interest due on this undisputed increase. Accordingly, the issue is now moot. See *R. V. Welch Assoc., Inc. v. State Highway Dept.*[7]

2. The Commissioner contends that the superior court erred in interpreting OCGA § 48-7-27 (d) (2) to allow Hanna to make a larger downward adjustment to his Georgia net taxable income than permitted under the statute. We agree.

"The cardinal rule in construing a legislative act is to ascertain the legislative intent and purpose in enacting the law, and then to give it that construction which will effectuate the legislative intent and purpose." (Punctuation omitted.) *Cox v. Fowler.*[8] In addition, "[s]tatutes should be read according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending their operation." (Punctuation omitted.) *Trax-Fax, Inc. v. Hobba.*[9]

As previously noted, former OCGA § 48-7-27 (d) (2)[10] provides:

> Nonresident shareholders of a Georgia Subchapter "S" corporation must execute a consent agreement to pay Georgia income tax on their portion of the corporate income in order for the Subchapter "S" corporation to be recognized for Georgia purposes. This consent agreement must be filed by the corporation with its corporate tax return. Shareholders of a federal Subchapter "S" corporation which is not recognized for Georgia purposes may make an adjustment to federal adjusted gross income in order to avoid double taxation on this type of income. Adjustments will not be allowed unless tax was actually paid by the corporation.

As is made plain by its language, the purpose of this statute is to

---

[7] *R. V. Welch Assoc., Inc. v. State Highway Dept.*, 114 Ga. App. 482 (151 SE2d 830) (1966).

[8] *Cox v. Fowler*, 279 Ga. 501, 502 (614 SE2d 59) (2005).

[9] *Trax-Fax, Inc. v. Hobba*, 277 Ga. App. 464, 466 (2) (a) (627 SE2d 90) (2006).

[10] Paragraph (d) (2) was amended in 2008, but those amendments did not change the key language at issue in this matter. See Ga. L. 2008, p. 898, §§ 6, 7.

allow shareholders of an S corporation, which has not been recognized for Georgia corporate tax purposes, to avoid the double taxation that would otherwise occur if the shareholder paid taxes on any portion of his passed-through income on which the corporation had already paid income taxes to Georgia at the corporate level. Indeed, this purpose is made clear by the caveat that the shareholder may not make the adjustment unless the corporation actually paid taxes to Georgia, as it is that specific portion of the shareholder's passed-through income that is not to be double taxed. Accordingly, based on the language and purpose of the statute, Hanna could adjust his federal adjusted gross income by subtracting only his share of the income which Worldwide earned from its rental property in Georgia (approximately $35,000 in each of the tax years at issue) and on which Worldwide had already paid Georgia corporate income taxes.

Hanna contends that the superior court was correct in interpreting former OCGA § 48-7-27 (d) (2) to allow him to adjust his federal adjusted gross income by subtracting the entire share of his passed-through income from Worldwide so long as the company pays any amount of tax on corporate earnings in Georgia. In support of this contention, he argues that the "double taxation" that the statute seeks to prevent is the situation in which he is taxed on his passed-through income from Worldwide and then is taxed in a later year on the same income when Worldwide decides to distribute that same passed-through income as dividends. We disagree.

First, such dividend taxes would be paid by the individual, not by the corporation. Yet former OCGA § 48-7-27 (d) (2) refers to adjustments for taxes "actually paid by the corporation," not to taxes actually paid by individuals. Thus, as previously noted, the double taxation to be avoided is the payment of income taxes by the corporation at the corporate level and then the payment of income taxes by the individual on the same income in the same year, not the payment of taxes by the individual one year and then the payment of taxes by the individual in a later year on the same income.

Second, an S corporation's distributions to its shareholders are not normally treated as taxable dividends. See I.R.C. § 1371 (c); *Williams v. Commr. of Internal Revenue*.[11] In fact, when an S corporation pays out distributions to shareholders that are attributable to previously passed-through income, those distributions are not considered to be taxable dividends that must be included again in the shareholders' federal adjusted gross income. See I.R.C. §§ 1367, 1368; *Williams*, supra, 110 T.C. at 29-30. Thus, Hanna's argument

---

[11] *Williams v. Commr. of Internal Revenue*, 110 T.C. 27, 29-30 (1998).

makes the incorrect assumption that for Georgia tax purposes, his federal adjusted gross income would be calculated based on his passed-through income from Worldwide for the tax years at issue but, at a later time after a distribution, would somehow be calculated based on the same income that had already passed through and been included as part of his federal adjusted gross income in the previous years. Accordingly, we find that Hanna's interpretation of the double taxation to be prevented cannot be accomplished without resorting to a forced construction of the statute and its purpose. Cf. *Employees' Retirement System of Ga. v. Melton.*[12]

Furthermore, if Worldwide had paid no Georgia corporate taxes, or if Hanna's brother were a resident of Georgia, or if his brother had consented to paying Georgia taxes (allowing Worldwide to be recognized as an S corporation under Georgia law), Hanna would not be allowed to subtract any of his Worldwide passed-through income from his federal adjusted gross income. However, under Hanna's interpretation of the statute, he receives the nonsensical benefit of being able to adjust his federal adjusted gross income by subtracting the entire share of his passed-through income from Worldwide in the event that Worldwide pays even $1 in corporate income taxes to the State of Georgia. We are under no duty to accept "a construction of a statute which will result in unreasonable consequences or absurd results not contemplated by the legislature." *Haugen v. Henry County.*[13] See *Mundell v. Chatham County Bd. of Tax Assessors.*[14]

Hanna further contends that his interpretation of the statute is supported by the fact that the legislature amended OCGA § 48-7-27 (d) (1) to include specific limiting language but did not similarly amend (d) (2). In 2006, the legislature amended OCGA § 48-7-27 (d) (1), which concerned the adjustment of gross income when an S corporation is not recognized by another state, by adding subsection (D), which in part provides: "Adjustments pursuant to this paragraph shall only be allowed for the portion of the income on which such tax was actually paid by such Subchapter 'S' corporation, partnership, or limited liability company." Because subsection (d) (2) was not similarly amended, Hanna argues that the legislature must not have intended for adjustments under subsection (d) (2) to be similarly limited.

However, this argument ignores that the plain language in subsection (d) (2) makes clear that its purpose is to prevent double

---

[12] *Employees' Retirement System of Ga. v. Melton,* 294 Ga. App. 634, 640-641 (1) (669 SE2d 692) (2008).

[13] *Haugen v. Henry County,* 277 Ga. 743, 746 (2) (594 SE2d 324) (2004).

[14] *Mundell v. Chatham County Bd. of Tax Assessors,* 280 Ga. App. 389, 390-391 (634 SE2d 180) (2006).

taxation on the portion of an S corporation shareholder's passed-through income on which the S corporation actually had already paid income taxes to Georgia at the corporate level. Furthermore, "where one seeks the benefit of an exemption from taxation, any such exemption must be strictly construed and will not be found unless the terms under which it is claimed clearly and distinctly show that such was the intention of the legislature." (Punctuation omitted.) *Ga. Dept. of Revenue v. Ga. Chemistry Council.*[15] See *Chilivis v. Dixon.*[16]

Thus, Hanna's adjustment to his federal adjusted gross income is limited to subtracting only his share of the passed-through income which Worldwide earned from its Georgia rental property (approximately $35,000 in each of the tax years at issue) and on which Worldwide had already paid income taxes. Accordingly, we reverse the superior court's grant of summary judgment to Hanna and its denial of summary judgment to the Commissioner.

*Judgment reversed. Adams and Doyle, JJ., concur.*

DECIDED MARCH 30, 2009 —
RECONSIDERATION DENIED APRIL 17, 2009

*Thurbert E. Baker, Attorney General, Warren R. Calvert, Senior Assistant Attorney General, Frances C. Mulderig, Assistant Attorney General*, for appellant.

*King & Spalding, Herschel M. Bloom, Nolan C. Leake, Mark S. Davis, Cook & Connelly, Bobby Lee Cook*, for appellee.

---

[15] *Ga. Dept. of Revenue v. Ga. Chemistry Council*, 270 Ga. App. 615, 618 (607 SE2d 207) (2004).
[16] *Chilivis v. Dixon*, 234 Ga. 703, 704 (217 SE2d 283) (1975).