### S09G1045. TRAWICK CONSTRUCTION COMPANY, INC. v. GEORGIA DEPARTMENT OF REVENUE.
(690 SE2d 601)

CARLEY, Presiding Justice.

Prior to October 1, 1999, Trawick Construction Company, Inc. was a closely-held Florida corporation. For federal income tax purposes, Trawick was treated as a Subchapter S corporation. As a result, Trawick's shareholders, instead of the corporation itself, were required to report their proportionate share of Trawick's taxable business income on their individual tax returns and pay the appropriate federal income taxes. For Georgia state income tax purposes, however, Trawick was a Subchapter C corporation which paid taxes directly to the State of Georgia on business income which was apportioned to this state. See generally *Graham v. Hanna*, 297 Ga. App. 542, 543 (677 SE2d 686) (2009). Thus, we note from the outset that the dissent is mistaken when it asserts, without authority, that, "[i]n Georgia, however, the shareholders must stand in the place of the corporate taxpayer, paying its tax from the proceeds passed through to them." (Dissenting opinion, p. 605)

On October 1, 1999, Trawick's shareholders sold all of their stock in Trawick and a sister company to Quanta Services, Inc. for $36,500,000. Pursuant to the stock purchase agreement and Section 338 (h) (10) of the Internal Revenue Code, 26 USC § 338 (h) (10), an election was made to treat the transaction as a deemed sale of all corporate assets, the majority of which was goodwill. For the shortened tax year ending on October 1, 1999, Trawick included the gain from the deemed sale of assets in its reported federal taxable income and apportioned a small percentage of that amount to this state, resulting in Georgia income tax of $47,980.

In 2004, the Georgia Department of Revenue, based upon a different apportionment, assessed Trawick an additional $224,820 in income tax, along with accrued interest. An administrative law judge (ALJ) concluded that the additional assessment was erroneous, but the State Revenue Commissioner reversed that decision. On judicial review, the superior court reversed the Commissioner's decision, and the Court of Appeals reversed the judgment of the superior court. *Georgia Dept. of Revenue v. Trawick Constr. Co.*, 296 Ga. App. 275 (674 SE2d 350) (2009). We granted certiorari to consider the Georgia corporate income tax implications of an election under § 338 (h) (10) of the Internal Revenue Code by the shareholders of a federal Subchapter S corporation.

OCGA § 48-7-21 (a) provides that a corporation's taxable income "shall consist of the corporation's taxable income as defined in the Internal Revenue Code of 1986, with the adjustments provided for in subsection (b) of this Code section and allocated and apportioned as provided in [OCGA §] 48-7-31." One of Trawick's contentions is that the federal § 338 (h) (10) election is inapplicable to the determination of Georgia corporate income tax, by virtue of subsection (b) (7) of OCGA § 48-7-21. Under that subsection, "[a]ll elections made by corporate taxpayers under the Internal Revenue Code . . . shall also apply under [OCGA § 48-7-20 et seq.] except elections involving consolidated corporate returns and Subchapter 'S' elections . . . ." OCGA § 48-7-21 (b) (7). Subsection (b) (7) (B) of the statute further provides that "Subchapter 'S' elections apply only" where, unlike here, "all stockholders are subject to tax in this state on their portion of the corporate income" and "all nonresident stockholders pay the Georgia income tax on their portion of the corporate income. . . ."

Trawick argues that, under federal regulations, the § 338 (h) (10) election cannot be "made by corporate taxpayers," as required in OCGA § 48-7-21 (b) (7). In the case of an unaffiliated Subchapter S corporation like Trawick, that election is "made jointly by [the purchasing corporation] and . . . the S corporation shareholders . . . ." 26 CFR § 1.338 (h) (10)-1 (c) (3). The Department argues that the election is "made for" the target corporation such as Trawick. 26 CFR § 1.338 (h) (10)-1 (c) (1).

Contrary to the dissent, OCGA § 48-7-12 (b) (7) does not provide for an "exemption," but rather deals with federal elections made by the taxpayer which, as illustrated in this case, may not benefit the taxpayer for state tax purposes. Thus, the proper rule of construction for statutory law regarding such elections is the general rule that, "when a taxing statute has doubtful meaning, it must be construed liberally in favor of the taxpayer and against the State. [Cit.]" *TELECOM\*USA v. Collins*, 260 Ga. 362, 364 (1) (393 SE2d 235) (1990). Furthermore, we are required "to follow the literal language of the statute 'unless it produces contradiction, absurdity or such an inconvenience as to insure that the legislature meant something else.' [Cit.]" *TELECOM\*USA v. Collins*, supra at 363 (1).

Giving the words "by corporate taxpayers" in OCGA § 48-7-21 (b) (7) their ordinary meaning, Trawick would have to be the actual maker of the election or to possess the authority to direct that the election be made. See *Lykes Bros. Steamship Co. v. United States*, 513 F2d 1342, 1348 (II) (Ct. Cl. 1975).

It is significant that the statute itself does not include [elections made] for the taxpayer — it merely speaks of

[elections made] by the taxpayer. The implication that the word "by" is not intended to mean "for" is strengthened by looking at the larger statutory phrase . . . .

*Lykes Bros. Steamship Co. v. United States*, supra at 1349-1350 (III). The relevant definitions of the verb "make," as used in OCGA § 48-7-21 (b) (7) in its past participle form, include "[t]o cause (something) to exist" and "[t]o legally perform, as by executing, signing, or delivering . . . ." Black's Law Dictionary, p. 967 (7th ed. 1999). Thus, the words "made by" in the Georgia statute "connote an active participation by the taxpayer" itself in actually making the election. *Lykes Bros. Steamship Co. v. United States*, supra at 1350 (III).

Furthermore, construing OCGA § 48-7-21 (b) (7) so as to exclude elections made "for" the taxpayer is generally consistent with the policy behind the express exceptions in the statute and does not produce contradictory or absurd results. The express exceptions in subsection (b) (7) relate to elections which, even if made by the taxpayer, nevertheless involve active participation in the election by entities other than the taxpayer. Those entities are affiliated corporations desiring to file a consolidated return with the taxpayer and shareholders wanting the taxpayer to be taxed as a Subchapter S corporation. OCGA § 48-7-21 (b) (7) (A), (B). Thus, subsection (b) (7) is indicative of a legislative skepticism regarding elections which may represent the interests of the corporate taxpayer itself less than the interests of other entities. As a whole, therefore, OCGA § 48-7-21 (b) (7) reflects a legislative policy of limiting the availability of elections which require the consent of entities other than the taxpayer. That policy is strongest where, as here, the election can legally be made only by other entities and not by the corporate taxpayer itself. In this regard, we note that the Court of Appeals relied on irrelevant evidence when it found that "Trawick joined in making the election as a matter of fact . . . ." *Georgia Dept. of Revenue v. Trawick Constr. Co.*, supra at 280-281 (2) (b).

Even if the wisdom behind OCGA § 48-7-21 (b) (7) as we construe it today is debatable, that subsection certainly is not contradictory or absurd, nor do its effects show that the General Assembly must have meant something else. The Department points out that the Internal Revenue Code provides a large number of elections. However, the Department fails to identify any elections, except for § 338 (h) (10) elections, which are legally required to be made by entities other than the taxpayer. Even assuming that some such elections are available, it does not appear that interpreting OCGA § 48-7-21 (b) (7) as excluding elections made "for" the taxpayer will have far-reaching adverse effects.

The Department has failed to show ill effects not only generally from a rejection of elections made "for" the taxpayer, but also specifically from the rejection of § 338 (h) (10) elections. The State of Georgia benefitted for many years from treatment of Trawick as a Subchapter C corporation which consistently paid taxes on its entire Georgia business income directly to this state, rather than treatment as a Subchapter S corporation whose taxes are proportionately paid to this state only by those nonresident shareholders who consent thereto. See *Graham v. Hanna*, supra. Thus, there is no obvious unfairness in now requiring Georgia to continue to treat Trawick as a Subchapter C corporation and not as a Subchapter S corporation. It is not unreasonable to require the State of Georgia to forego a § 338 (h) (10) election made for a Subchapter S corporation, when the State has consistently refused to recognize that corporation's original federal Subchapter S election.

Contrary to the dissent, Trawick's concession that it expects to benefit from a stepped-up basis in its assets due to increased amortization and depreciation in subsequent tax years hardly constitutes proof that our rejection of § 338 (h) (10) elections is illogical or harmful. In the first place, any assertion of a step-up in basis for purposes of Georgia taxation cannot be considered undisputed. The Department's position is that, if Trawick's taxable income at issue in this case must be computed as though the § 338 (h) (10) election was not made, then Trawick's depreciation in subsequent years will not be increased because of the stepped-up basis. Although resolution of that issue is not necessary here, we note that the Department may be correct in this respect. Because of our holding that a § 338 (h) (10) election is not one of the elections approved by OCGA § 48-7-21 (b) (7), it appears that the effect of that federal election will always have to be excluded from the determination of "the corporation's taxable income as defined in the Internal Revenue Code of 1986, with the adjustments provided for in subsection (b) . . . ." OCGA § 48-7-21 (a). Thus, the assets in question would have a stepped-up basis for federal tax purposes, but not for Georgia tax purposes. This result would not be unusual. "Because many states do not recognize [the § 338 (h) (10)] election, a purchaser will have a different basis for the acquired entity's assets for federal and state tax purposes." Mark J. Silverman and Lisa M. Zarlenga, *Use of Limited Liability Companies in Corporate Transactions*, SR022 ALI-ABA 3263, 3425 (XI) (C) (1) (2009). Moreover, even assuming that the assets of the acquired entity do have a stepped-up basis for purposes of Georgia taxation, such future tax treatment would not control the present issue. Future depreciation and amortization deductions cannot be neatly matched to a current § 338 (h) (10) election with respect to any individual state, as they depend on numerous other factors, includ-

ing any dispositions of assets and the percentage of the corporation's business done in Georgia, which can and often does either increase or decrease considerably over the years.

The General Assembly did "not specifically define the phrase 'by [corporate] taxpayer[s],' and the legislative background does not contain anything which would lead us to depart from the plain meaning of the statute." *Lykes Bros. Steamship Co. v. United States*, supra at 1348 (II). We conclude that the § 338 (h) (10) election is not "made by [the] corporate taxpayer[ ]" and, therefore, does not apply for Georgia income tax purposes. Because the gain from the deemed sale of assets recognized by Trawick on its federal income tax return did not constitute Georgia taxable income, the judgment of the Court of Appeals must be reversed. Trawick's remaining contentions are moot.

*Judgment reversed. All the Justices concur, except Benham and Melton, JJ., who dissent.*

MELTON, Justice, dissenting.

Under Georgia law, income flowing through a Subchapter "S" corporation to its shareholders is subject to Georgia corporate income tax as if the income was received by the corporation, not the shareholders. For this same reason, gain ultimately received by the shareholders in a deemed sale of an "S" corporation's assets pursuant to IRC § 338 (h) (10) is subject to Georgia corporate income tax. As a result, I believe that any gain generated by Trawick Construction Company's deemed sale of assets to Quanta Services, Inc. is taxable as corporate income to Trawick under Georgia law. Therefore, I respectfully dissent.

In Georgia, a corporation's Subchapter "S" election is generally not recognized for corporate income tax purposes unless all stockholders of the electing corporation are either: (1) Georgia residents subject to Georgia tax on their portion of corporate income or (2) nonresidents who pay Georgia income tax on their portion of the corporate income. OCGA § 48-7-21 (b) (7) (B).[1] The reason for this rule is simple. A Subchapter "S" corporation is a "pass-through" entity. Unlike a standard "C" corporation, corporate income merely flows through the corporation into the hands of its shareholders, as if the corporate form does not exist for purposes of federal income tax. The shareholders pay income tax, but the "S" corporation does not. Without OCGA § 48-7-21 (b) (7) (B), in situations where all

---

[1] This statute provides: "Subchapter 'S' elections apply only if all stockholders are subject to tax in this state on their portion of the corporate income. If all nonresident stockholders pay the Georgia income tax on their portion of the corporate income, the election shall be allowed."

shareholders are not subject to Georgia tax, Georgia could not properly collect a "corporation's taxable income from property owned or from business done in this state,"[2] because that income would have been passed through the corporation to nonresident shareholders. In order to properly collect corporate tax in this state, the Legislature determined that the "pass-through" fiction imposed by federal law is generally not recognized here, and the corporate form continues to exist.

The issue presently before us is whether the gain recognized on an "S" corporation's federal tax return and received by the shareholders of an "S" corporation from a deemed sale of assets pursuant to IRC § 338 (h) (10) is taxable in Georgia. In accordance with the decision of the State Revenue Commissioner, whose interpretation this Court is required to give "great weight and deference," *Ga. Dept. of Revenue v. Owens Corning*, 283 Ga. 489, 490 (660 SE2d 719) (2008), I believe that it is. An IRC § 338 (h) (10) election allows a purchasing corporation to treat a purchase of the stock of a target corporation as if it was actually the purchase of the assets of the target corporation at fair market value. The target corporation is treated as if it sold all assets in a single transaction and subsequently distributed the purchase proceeds to its shareholders. This treatment of the sale is beneficial to the participants because the presumed asset purchase results in a stepped-up basis for the target's assets. In turn, this stepped-up basis is used for future amortization and depreciation deductions, which are concomitantly increased. In simple terms, the stepped-up basis increases tax deductions.

In this case, Trawick contends that, based on statutory law, Georgia is precluded from recognizing its IRC § 338 (h) (10) election and cannot impose corporate tax on any gain from the deemed sale of assets. At the same time, Trawick argues that Georgia must recognize that its assets have a stepped-up basis for purposes of amortization and depreciation deductions. Contrary to Trawick's arguments, however, the statutes do not support this illogical result which even the majority admits is "disputable."

---

[2] OCGA § 48-7-21 (a) provides:
. . . Georgia taxable net income of a corporation shall be the corporation's taxable income from property owned or from business done in this state. A corporation's taxable income from property owned or from business done in this state shall consist of the corporation's taxable income as defined in the Internal Revenue Code of 1986, with the adjustments provided for in subsection (b) of this Code section and allocated and apportioned as provided in Code Section 48-7-31.

As an initial matter, it must be remembered that

> [t]axation is the rule, and exemption from taxation [is] the exception. And exemptions are made, not to favor the individual owners of property, but in the advancement of the interests of the whole people. Exemption, being the exception to the general rule, is not favored; but every exemption, to be valid, must be expressed in clear and unambiguous terms, and, when found to exist, the enactment by which it is given will not be enlarged by construction, but, on the contrary, will be strictly construed.

(Citations and punctuation omitted.) *Collins v. City of Dalton*, 261 Ga. 584, 585-586 (4) (a) (408 SE2d 106) (1991). The exemption from taxation now sought by Trawick is neither clear nor unambiguous, and it is not supported by a full review of the applicable statutes.

The guiding principle for taxation of "S" corporations in Georgia is that, for Georgia income tax purposes, the "pass-through" nature of an "S" corporation is disregarded and distribution of the income to the shareholders is taxed as income to the corporation. Here, Trawick owned the assets which were sold, received the income from the sale of these assets, and distributed this income to its shareholders pursuant to IRC § 338 (h) (10). The tax consequences of this election and distribution under OCGA § 48-7-21 (b) are that Trawick must pay Georgia income tax on this gain.

Contrary to Trawick and the majority, OCGA § 48-7-21 (b) (7) does not alter this result. This statute provides: "All elections made by corporate taxpayers under the Internal Revenue Code of 1954 or the Internal Revenue Code of 1986 shall also apply under this article except elections involving consolidated corporate returns and Subchapter 'S' elections. . . ." Trawick contends that, because this statute recognizes elections by "corporate taxpayers," the IRC § 338 (h) (10) election at issue in this case cannot be recognized because it was made by the shareholders of Trawick, not Trawick itself.[3] This construction of the statute is erroneous, however, because it ignores the guiding taxation principle of OCGA § 48-7-21 (b) and leads to an illogical result.

> [O]ne of the cardinal rules of statutory construction requires the courts to "consider the consequences of any proposed interpretation and not construe the statute to

---

[3] Under IRC § 338 (h) (10), the election to treat a stock purchase as a sale of assets is made "jointly by [the purchasing corporation] and . . . the [target] S corporation shareholders."

reach an unreasonable result unintended by the legislature. [Cit.]" *Trust Co. Bank v. Ga. Superior Court Clerks' Cooperative Auth.*, 265 Ga. 390 (1) (456 SE2d 571) (1995). "'"The construction (of statutes) must square with common sense and sound reasoning."'[Cit.]" *Thornton v. Clarke County School Dist.*, 270 Ga. 633, 634 (1) (514 SE2d 11) (1999). Moreover, "[l]anguage in one part of the statute must be construed in light of the legislature's intent as found in the whole statute. [Cit.]" *Echols v. Thomas*, 265 Ga. 474, 475 (458 SE2d 100) (1995).

*Haugen v. Henry County*, 277 Ga. 743, 745 (2) (594 SE2d 324) (2004). The legislature's clear intent in this case was to ensure that a federal "S" corporation election would not allow a corporation to improperly circumvent Georgia corporate income tax. Given this fact, Trawick's interpretation of OCGA § 48-7-21 (b) (7) cannot have merit unless this single provision is read in a vacuum, without consideration of the entire statute as a comprehensive whole. As indicated above, however, this is directly contrary to the rules of construction. In any event, as pointed out by the Court of Appeals, the IRC § 338 (h) (10) election in this case was approved by Trawick, as its Vice President-Finance signed the election documents on the corporation's behalf.

Furthermore, if the election is not recognized in this case, the statutes will produce an inconsistent and illogical result that defies common sense, and we cannot support any statutory construction which " 'produces contradiction, absurdity or such an inconvenience as to insure that the legislature meant something else.' " *TELECOM\*USA v. Collins*, 260 Ga. 362, 363 (1) (393 SE2d 235) (1990). Trawick contends that the election is inapplicable under Georgia law, and, as a result, no deemed sale of its assets occurred and it received no gain from any such deemed sale. At the same time, Trawick contends that there is a stepped-up basis for the sold assets as if the sale occurred for purposes of amortization and depreciation.[4] This contention defies basic common sense. It cannot be maintained that the Legislature intended for the state to be financially whipsawed in this manner, especially in light of the rationale behind disregarding the pass-through nature of an "S" corporation for taxation purposes. Trawick's faulty interpretation would create contradiction, absurdity, and inconvenience all at once. Id.

---

[4] As the Court of Appeals found, "[i]t is undisputed that Trawick received the tax benefit of a stepped-up basis in its assets as a result of the instant deemed sale, allowing it to claim increased depreciation and amortization deductions, thereby reducing its Georgia tax liability for subsequent periods." *Ga. Dept. of Revenue v. Trawick Constr. Co.*, 296 Ga. App. 275, 280 (2) (674 SE2d 350) (2009).

In addition, for purposes of OCGA § 48-7-21, the shareholders of an "S" corporation are, in essence, the corporate taxpayers. Georgia corporate income tax is "the corporation's taxable income as defined in the Internal Revenue Code of 1986." OCGA § 48-7-21 (a). However, an "S" corporation has no federal taxable income, as all of the income has been passed through to the shareholders. In Georgia, however, the shareholders must stand in the place of the corporate taxpayer, paying its tax from the proceeds passed through to them. The shareholders stand in the place of the corporation for purposes of paying income tax. In a like manner, they should also be considered to stand in the place of the corporation when making an IRC § 338 (h) (10) election. This interpretation fosters the entire reasoning behind the statute as a whole.

I am authorized to state that Justice Benham joins in this dissent.

DECIDED MARCH 1, 2010.

*Baker, Donelson, Bearman, Caldwell & Berkowitz, Robert G. Brazier, Steven G. Hall, Michael S. Evans, Nicholas C. Tomlinson,* for appellant.

*Thurbert E. Baker, Attorney General, Warren R. Calvert, Senior Assistant Attorney General, Lourdes G. de Mendoza, Assistant Attorney General,* for appellee.