A11A1757. BITUMINOUS INSURANCE COMPANY v. COKER.
(722 SE2d 879)

BOGGS, Judge.

We granted Bituminous Insurance Company's (Bituminous) application for interlocutory review of the trial court's denial of its motion for summary judgment on Carolyn Ann Coker's claim for uninsured motorist benefits. At issue is whether Coker provided eyewitness testimony to corroborate her description of how an unknown motorist caused an accident in which her husband, Terry Broom, was killed. Because no eyewitness testimony corroborated Coker's version of events, Bituminous was entitled to judgment as a matter of law. We therefore reverse.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. OCGA § 9-11-56 (c). On appeal from the grant or denial of summary judgment, we apply a de novo standard of review and view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the non-

movant. *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006).

> A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

(Citations omitted; emphasis in original.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Coker, the surviving spouse of Terry Broom and administratrix of his estate, filed a complaint, and later an amended complaint, against an unknown driver "John Doe" alleging the following:

> On April 7, 2009, Mr. Broom was driving a 1994 Freightliner Truck . . . traveling north on U.S. Highway 41 in Catoosa County. . . . Mr. Broom was hauling a load of lumber on the Freightliner. . . . As Mr. Broom approached the intersection of U.S. Highway 41 and Clark Road in Catoosa County, Defendant stopped suddenly in the path of the Freightliner at the intersection of U.S. Highway 41 and Clark Road in an attempt to make a left turn from U.S. Highway 41 onto Clark Road. . . . Because Defendant stopped suddenly in front of the Freightliner, Mr. Broom activated the Freightliner's horn. . . . After sounding the Freightliner's horn, Mr. Broom applied the Freightliner's brakes to avoid a collision with Defendant's vehicle. . . . Rather than make a left turn onto Clark Road from U.S. Highway 41, Defendant continued northward on U.S. Highway 41. . . . After Mr. Broom activated the horn and applied the brakes of the Freightliner, the load of lumber shifted and broke the straps holding the Freightliner's load in place. . . . When the straps holding the Freightliner's load broke, the lumber moved

forward and crushed the driving cab of the Freightliner into Mr. Broom. . . . When the lumber moved forward and encroached on the driving cab of the Freightliner, Mr. Broom was crushed and killed.

Coker asserted that the unknown motorist was negligent,[1] and therefore sought to recover under the uninsured motorist provision of an insurance policy issued by Bituminous covering the Freightliner that Broom operated for his employer. Bituminous moved for summary judgment on the ground that there was an absence of evidence to show that Coker's description of the accident was corroborated by eyewitness testimony as is required by OCGA § 33-7-11 (b) (2). The trial court denied Bituminous's motion for summary judgment, but granted a certificate of immediate review.

As set forth by the Supreme Court of Georgia,

[t]he purpose of uninsured motorist or UM coverage is to place the injured insured in the same position as if the offending uninsured motorist were covered with liability insurance. Stated otherwise, the purpose of uninsured motorist legislation is to require some provision for first-party insurance coverage to facilitate indemnification for injuries to a person who is legally entitled to recover damages from an uninsured motorist, and thereby to protect innocent victims from the negligence of irresponsible drivers.

(Citations and punctuation omitted.) *State Farm &c. Ins. Co. v. Adams*, 288 Ga. 315, 316 (702 SE2d 898) (2010). OCGA § 33-7-11 (b) (2) provides in part:

A motor vehicle shall be deemed to be uninsured if the owner or operator of the motor vehicle is unknown . . . and, in order for the insured to recover under the endorsement where the owner or operator of any motor vehicle which causes bodily injury or property damage to the insured is unknown, actual physical contact shall have occurred between the motor vehicle owned or operated by the unknown person and the person or property of the insured. *Such physical contact shall not be required if the description by the claimant of how the occurrence occurred is corroborated by an eyewitness to the occurrence other than the claimant.*

(Emphasis supplied.) "The corroboration required by the eyewitness

---

[1] Coker also asserted a claim for negligence per se for the unknown motorist's violation of OCGA § 40-6-241 (driver to exercise due care).

account is corroboration of that portion of the claimant's description asserting the *existence* of a phantom vehicle which *caused* the incident; that is, *existence and causation*." (Citation and punctuation omitted; emphasis supplied.) *Hohman v. State Farm &c. Ins. Co.*, 283 Ga. App. 430, 431 (641 SE2d 650) (2007). And, as this Court has previously noted, "[t]he statute requires that the claimant's description of how the accident occurred be corroborated *in its material allegation*, i.e., implication of the unidentified vehicle." (Citations and punctuation omitted; emphasis in original.) Id.

As there is no allegation that Broom made contact with the unknown motorist's vehicle, the dispositive issue is whether any eyewitness corroboration was shown. Four eyewitnesses were deposed in connection with the case.[2] The first witness, Harriet Clark, stated that she was "coming down Clark Road towards 41" and stopped at a stop sign when she heard a loud noise. She looked to her right and observed Broom's truck and that the straps securing the lumber he was hauling were "broke and were flopping on the truck." She stated that Broom then "started slamming on his brakes" and lumber was flying from the tractor-trailer. Clark stated that it was a bit cold but that the road was dry. She explained that she saw no other vehicles in the area, stating specifically that "[t]here was nothing in front of [Broom]."

A second witness, Scottie Kilgore, testified that he was traveling south on U. S. Highway 41 behind another vehicle, about 150 yards from the intersection of Clark Road, when he looked away for a "split second." When Kilgore looked up, he saw another vehicle coming from the opposite direction meet and pass him, and then looked ahead of him and saw lumber and smoke coming from Broom's truck which was traveling in the same direction as the vehicle that passed him. He explained that when the car passed him he was 100 to 150 yards away from Broom's tractor-trailer. Kilgore agreed that "[n]othing that [he] saw that car do that would have caused an emergency braking maneuver by the tractor-trailer driver," and that there were no vehicles at the intersection of Clark Road attempting to pull out onto Clark Road that would have impeded the tractor-trailer.

The third witness, Carol Worthington, deposed that she was on her front porch when the accident occurred and had a clear view of the highway. She explained that she saw Broom's tractor-trailer go by after "it blowed [sic] the horn, and then it went irk, irk, irk . . . and

---

[2] Corporal Gleaton with the Georgia State Patrol was also deposed but was not an eyewitness to the accident. Gleaton stated that he found no evidence of any other car coming into contact with Broom's tractor-trailer, and explained that the straps holding the load had an intact previous tear and a fresh tear.

slammed his brake on. Then I hear pow, like it hit a car." She explained that the sounds she heard were the brakes and the breaking of the straps securing the load. Worthington stated further that she "saw him locking it down and the cab leaning forward because he was screeching so hard . . . as he was skittling down" U. S. Highway 41 toward Clark Road. Worthington then got in her vehicle and headed "down to Clark Road . . . because I knew somebody probably tried to pull out in front of somebody here or something, because it happened all the time. But I didn't see a wrecked car here. All I seen [sic] was the white truck out in the road here, but it wasn't damaged." She described the truck as a white pickup truck like a "small Ram or something . . . [o]r Dakota."[3] She explained that as she looked to her right, north on U. S. Highway 41, she saw the back of the white truck and a load of lumber, but did not know whether the pickup truck was there "before or after the tractor-trailer." She did not recall seeing any other vehicle in front of, or in contact with, Broom's tractor-trailer that may have caused it to "go into a full braking, hard braking maneuver."

A fourth witness, Brian Smith, deposed that he was heading south on U. S. Highway 41 when he observed Broom's tractor-trailer skid to a stop. He explained that there were no vehicles in front of him but recalled a small white car stopped on U. S. Highway 41 with its turn signal on and in the proper position to make a left turn onto Clark Road. Smith first stated that the car turned left before he got to the intersection, but then stated that the vehicle "may have still been sitting there waiting to turn, and the lumber didn't — you know, maybe he got stopped before — you know, far enough where the car didn't get hit by the lumber, but I don't — I remember the lumber just hitting the street and didn't hit any vehicles or anything." Smith responded negatively when asked if there was anything "that brought a concern of emergency to [him] as [he was] driving southward toward Clark [Road]." When asked if he knew the reason Broom "had to make a full braking maneuver," Smith speculated as to "two possible explanations," but then again asserted that the white car was at a complete stop at the intersection and was in a "proper position on the roadway," and that he did not "see anything that appeared to be an incorrect driving maneuver that the motorist in the white car did before the truck started braking." He stated that he did not hear the tractor-trailer's horn.

Although three of the four witnesses established the presence of an unknown vehicle, each described the vehicle in a different location,

---

[3] Kilgore stated that he was driving a white Dodge Ram pickup truck and that he pulled over to the side of the road after witnessing the accident "so nobody else could come through."

and none corroborated Coker's description "of how the occurrence occurred," i.e. the unknown motorist "stopped suddenly in the path of the Freightliner at the intersection of U.S. Highway 41 and Clark Road in an attempt to make a left turn from U.S. Highway 41 onto Clark Road." "[T]he mere fact that an accident happened affords no basis for recovery unless it is shown that the accident was caused by specific acts of negligence; the insured must be able to prove that the unknown driver was negligent." (Citation, punctuation and footnote omitted.) *Hohman*, supra, 283 Ga. App. at 433. In the absence of evidence corroborating Coker's material allegation that the driver of the unknown vehicle negligently caused the accident, Bituminous was entitled to summary judgment. See *Hambrick v. State Farm Fire &c. Co.*, 260 Ga. App. 266, 266-267 (581 SE2d 299) (2003) (no evidence to support claimant's complaint that driver of unknown vehicle was negligent in striking a construction barrel which struck plaintiff's vehicle); *Phillips v. South West Mechanical Contractors*, 254 Ga. App. 144, 147-148 (2) (b) (561 SE2d 471) (2002) (decedent struck and killed by unknown motorist after being thrown from ATV, but no eyewitnesses to collision corroborated claimant's assertion that unknown motorist was negligent); compare *State Farm &c. Ins. Co. v. Swetmon*, 228 Ga. App. 538, 539-540 (492 SE2d 678) (1997) (trial court properly denied defendant's motion for summary judgment where eyewitness corroborated plaintiff's claim that unknown driver went into his lane causing him to strike utility pole).

Coker argues that *Phillips*, supra, stands for the proposition that the court can consider noneyewitness evidence if such evidence is offered. But *Phillips* does not stand for this proposition, holding only that the plaintiffs failed to come forward with any evidence to raise a question of fact as to the unknown motorist's negligence. Id. at 147. Eyewitness corroboration is a statutory requirement created by the legislature. And "we are required to follow the literal language of the statute unless it produces contradiction, absurdity or such an inconvenience as to insure that the legislature meant something else." (Citations and punctuation omitted.) *Trawick Constr. Co. v. Ga. Dept. of Revenue*, 286 Ga. 597, 598 (690 SE2d 601) (2010). "[I]f the General Assembly had intended something other than the literal meaning of the words used in the statute, it could have so specified." (Citation and punctuation omitted.) *Hoffman v. Doe*, 191 Ga. App. 319, 320 (381 SE2d 546) (1989) (construing OCGA § 33-7-11 (b) (2)).

Coker also cites *Painter v. Continental Ins. Co.*, 233 Ga. App. 436 (504 SE2d 285) (1998), to contend that eyewitness testimony and circumstantial evidence (the sound of the tractor-trailer's horn before the sound of the brakes) establish that negligence by the

"phantom automobile's" driver caused the accident. But in *Painter*, an eyewitness testified positively that an unknown vehicle came off an exit ramp and caused the plaintiff's vehicle to swerve and lose control. This corroborated the plaintiff's claim that the unknown driver was negligent despite possible inconsistency as to whether the unknown vehicle actually struck the plaintiff's vehicle. Id. at 438-439 (2). That is not the case here. No witnesses corroborated Coker's claim that the unknown motorist negligently stopped in the path of Broom's tractor-trailer.[4]

*Judgment reversed. Mikell, P. J., and Dillard, J., concur.*

DECIDED FEBRUARY 8, 2012 —

*Leitner, Williams, Dooley & Napolitan, David W. Noblit, Mary C. DeCamp*, for appellant.

*Gearhiser, Peters, Cavett, Elliott & Cannon, Gary L. Henry*, for appellee.

---

[4] Coker's reliance on *Langford v. Royal Indem. Co.*, 208 Ga. App. 128 (3) (430 SE2d 98) (1993) (physical precedent only as to Division 3) and *State Farm Fire &c. Co. v. Guest*, 203 Ga. App. 711 (417 SE2d 419) (1992) (physical precedent only) is also misplaced as both of those cases are physical precedent only and therefore not binding on this Court. See Court of Appeals Rule 33 (a).